# EXHIBIT 2

# EXCESS DRUGGISTS LIABILITY INSURANCE POLICY



**Insurer:** Hartford Fire Insurance Company
One Hartford Plaza, Hartford, CT 06155

**DECLARATIONS**

**POLICY NO.** 20 ECS D70784

**Previous Policy No.**
20 ECS D70778

PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
P.O. BOX 32016
LAKELAND, FL 33802

**Items**

**1. Named Insured and Mailing Address**

**The Named Insured is:** [ ] Individual
[ ] Partnership   [ ] Joint Venture
[x] Corporation   [ ] Organization (Other than a Partnership or Joint Venture)

**2. Policy Period**
12:01 a.m. Standard Time at the address of the Named Insured as stated herein.

| 01/01/2014 | 01/01/2015 |
|---|---|
| Inception Date | Expiration Date |

**Producer's Name and Address**

MARSH USA, INC.
TWO ALLIANCE CENTER
3560 LENOX ROAD, SUITE 2400
ATLANTA, GA 30326

**Code No.**

260102

**3. Audit Period is the Policy Period unless otherwise herein stated:** [ ] Semi-Annual   [ ] Quarterly   [ ] Monthly
[ ] Annual   [x] Not subject to Audit

**4. Deposit Premium** $10,000.   which is   [x] A Flat Charge Per Each Policy Period
[ ] Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

**Minimum Retained Audit Premium**   $10,000.

**Minimum Retained Premium**   $10,000.   , not subject to adjustment in the event of cancellation by **you.**

**5. Limits of Liability and Matching Deductible**
The Limits of Liability, subject to all the terms of this policy that apply, are:

| | |
|---|---|
| Druggists Products Aggregate Limit | $300,000. |
| Bodily Injury Limit - Each Occurrence | $100,000. |

**6. Self-Insured Retentions**
Your self-insured retentions, subject to all the terms of this policy that apply, are:

| | |
|---|---|
| Druggists Products Aggregate Retention | UNLIMITED |
| Bodily Injury - Each Occurrence Retention | $1,900,000. |

**7. Business Description:**
RETAIL GROCERY CHAIN

**8. Form Numbers of Policy Provisions and Endorsements forming a part of this policy:**
SEE LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A PART OF THE POLICY AT ISSUE.

This policy will not be valid unless countersigned by our duly authorized representative.

Countersigned by   *Chris Ryan*
_Authorized Representative_

01/17/2014

**Form HS-1040-3 (ED. 02/03)**

(c) 2001, The Hartford

**POLICY NUMBER:** 20 ECS D70784



# LISTING OF COVERAGE PARTS AND ENDORSEMENTS FORMING A PART OF THE POLICY

The following is a listing of policy provisions, forms and endorsements by Form Number and Title that form a part of the policy at issue.

| | FORM NUMBER | | TITLE |
|---|---|---|---|
| 1 | HS-1040-3 | 02-03 | EXCESS DRUGGISTS LIABILITY INSURANCE POLICY PROVISIONS - FLORIDA |
| 2 | GN990113 | 10-91 | INSTALLMENT PAYMENT PLAN |
| 3 | GN253414 | 06-01 | BROAD FORM NAMED INSURED |
| 4 | GN032915 | 12-98 | DEDUCTIBLE LIABILITY INSURANCE |
| 5 | ET2412 | 11-07 | AMENDMENT OF DEFINITION - DRUGGISTS PRODUCTS HAZARD |
| 6 | GT040213 | 02-06 | AMENDMENT OF SECTION II - WHO IS AN INSURED JOINT VENTURE AND PARTNERSHIPS |
| 7 | GN210013 | 10-91 | EXCLUSION - ALL HAZARDS IN CONNECTION WITH DESIGNATED PREMISES |
| 8 | ET5002 | 11-07 | EXCLUSION - PROFESSIONAL MEDICAL SERVICES |
| 9 | GN984717 | 03-12 | CONFIRMATION OF COVERAGE ELECTION - TERRORISM RISK INSURANCE ACT |
| 10 | GS2173 | 03-12 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| 11 | GN022015 | 11-06 | FLORIDA CHANGES |
| 12 | IL0021 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |

**Form HS 99 22 06 08**

(c) 2008, The Hartford

**POLICY NUMBER:**  20 ECS D70784



# LISTING OF COVERAGE PARTS AND ENDORSEMENTS FORMING A PART OF THE POLICY

The following is a listing of policy provisions, forms and endorsements by Form Number and Title that form a part of the policy at issue.

|     | FORM NUMBER |       | TITLE                                                                      |
| --- | ----------- | ----- | -------------------------------------------------------------------------- |
| 13  | IH9940      | 04-09 | U.S. DEPT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| 14  | GN236213    | 02-03 | WAR LIABILITY EXCLUSION                                                     |
| 15  | GN999914    | 12-06 | MANDATORY FORM - OFFICER SIGNATURE                                          |
| 16  | HS9948      | 06-08 | IMPORTANT STATE INFORMATION  FRAUD WARNING STATEMENTS                       |
| 17  | G-3418-0    |       | PRODUCER COMPENSATION NOTICE                                               |

**Form HS 99 22 06 08**

(c) 2008, The Hartford



# EXCESS DRUGGISTS LIABILITY
# INSURANCE POLICY PROVISIONS-FLORIDA

> **Our Limits of Liability under this policy, which can be reduced or exhausted by payment of any combination of damages or claim expenses, are in excess of your Self-Insured Retention.  Your Self-Insured Retention can also be reduced or exhausted by any combination of damages or claim expenses.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page as the insurer.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks are defined in SECTION V (DEFINITIONS) of this policy.

In consideration of the payment of the premium when due, and:

a.  In reliance upon the statements made in the Declarations; and

b.   Subject to the Limits of Liability, Exclusions, Definitions, Conditions and all other terms of this policy, including those modified, replaced by or added by endorsements we issue forming a part of this policy,

we agree with you as follows:

SECTION I - COVERAGES
Druggists' Products Liability
1.  Insuring Agreement.
   a.   Our obligation to pay, on your behalf, those damages and "claim expenses" you become legally liable to pay because of "bodily injury" arising out of the "druggists products hazard:"
      (1) Is limited to the Limits of Liability also set forth in the Declarations; and
      (2) Applies only to the extent that such damages and "claim expenses" payable by us in (1) are in excess of the "self-insured retention" that has been exhausted solely by your payment of that portion of judgments, settlements or "claim expenses" to which this policy would have applied in the absence of the "self-insured retention."
   b.   The insured, against whom a "claim" is made, acting through its "claim servicing agency" shall have the duty to defend any "suit" seeking damages because of "bodily injury" to which this policy applies.  The insured will also have the obligation of paying any defense counsel selected by or on behalf of the insured by the "claim servicing agency" and all defense costs.   These costs will continue to be borne by the insured until the "self-insured retention" has been exhausted solely by the payment of that portion of judgments, settlements or "claim expenses" to which this policy would have applied in the absence of the "self-insured retention." If we make a payment relating to the defense, it will be on behalf of the insured, and the insured shall be obligated to reimburse us promptly.  In no event shall the "self-insured retention" be reduced by "claim expenses," the insured's overhead, cost of investigation of "claims" by salaried "employees" or "employee" time.
   c.   The insured, acting through its "claim servicing agency," shall be obligated to assume charge of, participate in, or pay for the investigation of any "claim" or the defense of any "suit" for any amount within

(c) 2003, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc.
with its permission.  Copyright, Insurance Services Office, Inc. 2001)

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

the "self-insured retention." However, if a "claim" or "suit," in our opinion, involves or is reasonably likely to involve payment of damages or "claim expenses" by us under this policy, we shall, at our own expense, have the right but not the duty to investigate and to assign additional counsel in addition to any defense counsel assigned by or on behalf of the insured.   Such additional counsel shall have the right to participate in the investigation, defense or settlement of any "claim" or "suit" on our behalf. In any event, we shall not have the obligation to make payments for "claim expenses" or any other defense counsel or defense costs which are not "claim expenses."

If we avail ourselves of the foregoing right(s), the insured, its "claim servicing agency" and we shall cooperate in such investigation, defense or settlement.

Any right or opportunity we have exercised to participate in the defense ends at our discretion, but in all events ends when we have used up the limit of liability in the payment of "claim expenses," judgments or settlements to which this policy applies.

d.  The amount we will pay for damages and "claim expenses" is limited as described in LIMITS OF LIABILITY (SECTION III).  We have no other obligation to pay anything unless explicitly provided for under the SUPPLEMENTARY PAYMENTS section of this policy.

e.  This policy applies to "bodily injury" only if:

(1) The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" occurs during the "policy period."

f.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury."

2.  Exclusions.

This policy does not apply to:

a.  Expected or Intended Injury

Any injury or damage expected or intended from the standpoint of the insured.

b.  Contractual Liability

"Bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" occurs subsequent to the execution of the contract or agreement.  Solely for the purpose of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee are deemed to be damages because of "bodily injury," provided:

(a) Liability to such indemnitee for, or for the cost of, that indemnitee's defense has also been assumed in the same "insured contract;" and

(b) Such attorney fees and litigation expenses are for defense of that indemnitee against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged; or

(2) That the insured would have in the absence of the contract or agreement.

c.  Alcohol or Intoxication

"Bodily injury" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**EXCESS DRUGGISTS LIABILITY
INSURANCE POLICY**

e.  Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business: or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

f.  Pollution

(1) Any injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants:"

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations; or

    (e) To the extent that any such injury or damage is included in the "products-completed operations hazard."

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" or

    (b) Claim or suit by or on the behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

g.  War

"Bodily injury" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

h.  Damage to Your Product

Any injury or damage to "your druggists product" arising out of it or any part of it.

i.  Damage to Impaired Property or Property Not Physically Injured

Any injury or damage to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your druggists product;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

j.  Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your druggists product;" or

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

(2) "Impaired property;"

if such product or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

k.  Employment Related Practices

Any injury or damage to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

l.  Asbestos

To any damages, judgments, settlements, loss, costs or expenses that:

(1) May be awarded or incurred by reason of any "claim" or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard;"

(2) Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard;" or

(3) Arise out of any "claim" or "suit" for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard."

As used in this exclusion, "asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

m. Prior Knowledge

Any injury or damage if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy and if any insured knew, or should have known of such injury or damage.

SUPPLEMENTARY PAYMENTS

1.  Subject to the Limit of Liability, we will pay "claim expenses" which are incurred after the exhaustion of the "self-insured retention" provided the insured has satisfied its "self-insured retention" obligation.  Such payments will be in the ratio that our liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement.

2.  We will pay the following, after the exhaustion of the "self-insured retention:"

a.  Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which this policy applies.  We do not have to furnish these bonds;

b.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability. We do not have to furnish these bonds;

c.  An insured's actual loss of earnings, up to $250 per day, resulting from time off from work because of our request for assistance in the investigation or defense of a "claim" or "suit;" and

d.  All costs taxed against the insured in the "suit."

**FORM HS-1040-3 (ED. 2/24/03)**                                                    **Page 4 of 15**

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

3.  We will pay the interest on that portion of a judgment or settlement in excess of the amount of the "self insured retention" that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of liability.

Any amounts we pay under 1. through 3. above will reduce the limits of liability.

SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e.  A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

    a.  Your "employees," other than either your "executive officers," (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the providing of pharmacists professional services in conduct of your business.  However, no "employee" is an insured for "bodily injury:"

        (1)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

        (2)  To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above; or

        (3)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (1)(b) above.

    b.  Any person or organization having proper temporary custody of your property if you die, but only:

        (1)  With respect to the liability arising out of the maintenance or use of that property; and

        (2)  Until your legal representative has been appointed.

    c.  Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy.

3.  Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period," whichever is earlier; and

    b.  This provision does not apply to "bodily injury" that occurred before you acquired or formed the organization.

4.  Any person or organization with whom you agreed, because of a written contract or written agreement to provide insurance, but only with respect to "bodily injury" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

    a.  The insurance afforded the vendor does not apply to:

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

      (1) "Bodily injury" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

      (2) Any warranty unauthorized by you;

      (3) Any physical or chemical change in the product made intentionally by the vendor;

      (4) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

      (5) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product; or

      (6) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

  b.  This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

No person or organization is an insured with respect to:

a.  The conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations; or

b.  Any newly acquired organization that has not been reported within the time period in the provisions set forth in paragraph 4.a above, and that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF LIABILITY

1.  Subject to item 1.a. of the Insuring Agreement, the Limits of Liability shown in the Declarations and the rules below fix the most we will pay for damages and "claim expenses" regardless of the number of:

  a.  Insureds;

  b.  "Claims" made or "suits" brought; or

  c.  Persons or organizations making "claims" or bringing "suits."

  While you are completely responsible for payment of all amounts within the "self-insured retention," we may pay any part or all of the Limit Of Liability to effect settlement of any "claim" or "suit" for an amount in excess of the "self-insured retention."

2.  The Druggists Products Aggregate Limit is the most we will pay for damages and "claim expenses" because of "bodily injury" included in the "druggists products hazard."

3.  Subject to 2. above, the Bodily Injury Limit--Each Occurrence is the most we will pay for damages and "claim expenses" under "bodily injury" arising out of any one "occurrence."

4.  If more than one limit of liability under this policy and any endorsements attached thereto applies to any "claim" or "suit," the most we will pay under this policy and such endorsements is the single highest limit of liability of all coverages applicable to such "claim" or "suit."

The Limits of Liability of this policy apply separately to each "policy period." If the "policy period" is extended after issuance for an additional period, such additional period will be deemed part of the "policy period" for purposes of determining the Limits of Liability.

## SECTION IV - CONDITIONS

1. Appeals.

  a.  For amounts within the "self-insured retention:"

      (1) If we or the insured with our consent, elect to appeal a judgment, then any resultant additional expenses, settlements or judgments to which this policy applies shall reduce the amount of the "self-insured retention." We shall be liable for such additional expenses, settlements or judgments that are in excess of the "self-insured retention".

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

      (2) If the insured, without our consent, elects to appeal a judgment, any resultant additional expenses, settlements or judgments shall not reduce the amount of the "self-insured retention." We shall not be liable for such resultant additional expenses, settlements or judgments, whether or not they are in excess of the "self-insured retention."

  b. For amounts in excess of the "self-insured retention:"

      (1) If the insured elects to appeal, and such appeal is with our consent, then we shall be liable for any additional expenses, settlements or judgments to which this policy applies.

      (2) If the insured elects to appeal, and such appeal is without our consent, then we shall not be liable for any additional expenses, settlements or judgments.

      (3) If the insured elects not to appeal a judgment, then we may, at our option, make such appeal at our cost and expense, and we shall be liable for any additional expenses, settlements or judgments to which this policy applies.

We will in no event be obligated to post or obtain any appeal bond, but we will pay for the cost of such a bond obtained by the insured on appeals we consent to, and taxable costs, disbursements and interest incidental thereto.

2. Bankruptcy.

Bankruptcy or insolvency of the insured or of an insured's estate will not relieve us of our obligations under this policy.

3. Cancellation.

  a. The "first named insured" may cancel this policy by:

      (1) Mailing or delivering to us advance written notice of cancellation; or

      (2) Surrendering the policy to us or any of our authorized agents.

  b. (1) CANCELLATION FOR POLICIES IN EFFECT 90 DAYS OR LESS

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the "first named insured" written notice of cancellation, accompanied by the reasons for cancellation, at least:

      (a) 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or

      (b) 20 days before the effective date of cancellation, if we cancel for any other reason, except we may cancel immediately if there has been:

         (i) A material misstatement or misrepresentation; or

         (ii) A failure to comply with underwriting requirements established by us.

  b. (2) CANCELLATION FOR POLICIES IN EFFECT FOR MORE THAN 90 DAYS

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

      (a) Nonpayment of premium;

      (b) The policy was obtained by a material misrepresentation;

      (c) There has been a failure to comply with underwriting requirements within 90 days of the effective date of coverage;

      (d) There has been substantial change in the risk covered by the policy; or

      (e) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the "first named insured" written notice of cancellation, accompanied by the reasons for cancellation, at least:

      (i) 10 days before the effective date of cancellation if cancellation is for the reason stated in (2)(a) above; or

      (ii) 45 days before the effective date of cancellation if cancellation is for the reasons stated in (2)(b), (c), (d) or (e) above.

  c. We will mail or deliver our notice to the last mailing address known to us of the "first named insured."

**EXCESS DRUGGISTS LIABILITY
INSURANCE POLICY**

    d.   Notice of cancellation by us will state the effective date of the cancellation.  The "policy period" will end on that date.

    e.   If this policy is cancelled, we will send the "first named insured" any premium refund due.  If we cancel, the refund will be pro-rata.  If the Named Insured cancels, we shall compute the return premium at 90% of the pro-rata unearned premium.  We shall in any event be entitled to retain any Minimum Retained Premium stated in the Declarations.

    f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

    g.   Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.  Changes.

This policy contains all the agreements between you and us concerning the insurance afforded.

The "first named insured" is authorized on behalf of all insureds to agree with us on all changes in the terms of this policy.

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

5.  Duties In The Event Of Occurrence, Claim or Suit.

    a.   You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" under this policy.  This requirement applies only when such "occurrence" is known to any of the following:

        (1) You;

        (2) Any "executive officer" or insurance manager of an insured; or

        (3) Any elected or appointed official, if an insured is a political subdivision or public entity;

        (4) Any partner, if an insured is a partnership; or

        (5) Any member, if an insured is a joint venture or limited liability company.

        To the extent possible, notice should include:

        (1) How, when and where the "occurrence" took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence."

    b.   If a "claim" is made or a "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

        (2) Notify us in writing as soon as practicable if the "claim" is likely to exceed the amount of the "self-insured retention."

    c.   You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" involving or likely to involve a sum in excess of any "self-insured retention;"

        (2) Authorize us to obtain records and any other information;

        (3) Cooperate with us in the investigation or settlement of the "claim" or defense of the "suit;"

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or the "self-insured retention" applies;

        (5) Advise us of the name and address of defense counsel retained to represent the insured's interest with respect to the "self-insured retention;"

        (6) Furnish us the following information:

           (a) Quarterly loss runs identifying all open and paid "claims" and "claim expenses." Such loss runs shall be furnished until all "claims" and "claim expenses" are paid;

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

(b) Complete information on all "claims" reserved for 50% or more of the amount of the "self-insured retention." This information must be furnished within 30 days from the date such reserve is established;

(c) Complete information on all "claims" (including multiple "claims") arising out of an "occurrence" which might require payment in excess of the "self-insured retention." This information must be furnished within 30 days from the date such possibility first arises;

d) Complete information on any "claim" arising out of an "occurrence" involving a minor child, or any of the following injuries:

(i) Death,

(ii) Quadriplegia,

(iii) Paraplegia,

(iv) Brain Damage,

(v) Loss of Vision,

(vi) Loss of Limb, or

(vii) Hospitalization for more than 30 days.

This information must be furnished within 30 days from the date such possibility first arises; and

(7) Maintain adequate "claim" records and supporting data which document reserves for payment of "claims," dates and amounts of any settlements, including specific identification of "claim expenses" incurred and paid.

d. The insured, as respects its "self-insured retention," shall exercise good faith and due diligence in evaluating whether to accept or reject a settlement offer extended by a party making a "claim" against such insured. A failure by an insured to exercise such good faith or due diligence will void any coverage under the terms of this policy as to that portion of any subsequent judgment or settlement in excess of the amount of the settlement that should and could have been accepted.

e. No insureds will, except at that insured's cost, make or agree to any settlement for a sum in excess of the "self-insured retention" without our consent.

If any insured makes any payment, assumes any obligation, or incurs any expense, other than first aid, without our consent, such payment, obligation or expense will be at that insured's own cost.

6. Examination Of Your Books And Records.

We may examine and audit your books and records as they relate to this policy at any time during the "policy period" and up to three years afterward.

We may do the same as to the books and records of any organization you newly acquire or form that is deemed to be a Named Insured under this policy.

7. Inspections And Surveys.

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:
(a) Are safe or healthful; or

(b) Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8. Legal Action Against Us.

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability.

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9.  Maintenance of Self-Insured Retention.

You shall do whatever is required, including provision of sufficient funds, to maintain the "self-insured retention" in full effect during the currency of this policy.   If the "self-insured retention" becomes invalid, suspended, unenforceable or uncollectable for any reason, including bankruptcy or insolvency, we shall be liable only to the extent we would have been had such "self-insured retention" remained in full effect.

The "first named insured" shall give us written notice as soon as practicable of any change in the operating status of any "self-insured retention," or when the sum of all incurred losses, including "claim expenses," equals or exceeds 70% of the "self-insured retention."

10. Other Insurance.

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for damages in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

11. Premiums.

a.  We will compute all premiums for this policy, including any applicable Audit Premium, Minimum Retained Audit Premium and Minimum Retained Premium in accordance with our rules, rates and rating plans.

b.  The "first named insured:"

(1) Is responsible for payment of all premiums when due; and

(2) Will be the payee for any return premiums we pay.

c.  If the Deposit Premium set forth in the Declarations is adjustable, such Deposit Premium is an estimated premium for the Audit Period set forth in the Declarations.   At the end of such Audit Period, we will compute any applicable Audit Premium. Then:

(1) Audit Premium which is greater than the paid Deposit Premium is due and payable by the "first named insured" upon notice; or

(2) Paid Deposit Premium which is greater than Audit Premium will be refunded to the "first named insured," subject to any Minimum Retained Audit Premium and Minimum Retained Premium set forth in the Declarations,

whichever of (1) or (2) applies.

d.  The "first named insured" must keep records of the information we need for premium computation, and send us copies at such times as we may request.

e.  The Minimum Retained Premium stated in the Declarations shall be considered as fully earned at the inception of the policy.

12. Representations.

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us;

c.  We have issued this policy in reliance upon your representations; and

d.  If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

**EXCESS DRUGGISTS LIABILITY
INSURANCE POLICY**

13. Separation Of Insureds.

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the "first named insured," this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom "claim" is made or "suit" is brought.

14. Transfer of Rights Of Recovery Against Others To Us.

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability;

(2) Second, us, along with any other insurers having a quota share interest at the same level; and

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a "claim" by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

15. Transfer Of Your Rights And Duties Under This Policy.

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.

Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

16. When We Do Not Renew.

a. If we decide not to renew this policy, we will mail or deliver to the "first named insured" written notice of non-renewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the "first named insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient notice.

c. If we offer to renew this policy and the "first named insured" does not accept our offer during the current "policy period," this policy will expire at the end of such "policy period."

SECTION V - DEFINITIONS

1. "Aircraft" includes but is not limited to heavier-than-air flying vehicles, helicopters, gliders, missiles or spacecraft.

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

3. "Claim" means a demand received by any insured for damages alleging injury or damage to persons or property including the institution of a "suit" for such damages against any insured. All acts or omissions in the furnishing of "your druggists product" to any one person, regardless of the actual number of "claims" or "suits" arising out of such acts or omissions, shall be considered as arising solely out of one "claim."

4. "Claim expenses" means all expenses incurred by:

a. Your "claim servicing agency," pursuant to our claim service agreement;

b. Us, or

c. The insured with our written consent

But "claim expenses" include only those expenses incurred in the investigation of "claims" or defense of "suits." "Claim expenses" are not:

(1) "Claim" fees paid to any "claim servicing agency;"

EXCESS DRUGGISTS LIABILITY
INSURANCE POLICY

      (2) Any expenses associated with appeals made by the insured without our consent for judgments or settlements, whether greater or lesser than the amount of the "self-insured retention;"

      (3) Salaries of your and our "employees," except the costs and expenses of our staff defense counsel and legal assistants; or

      (4) Damages.

5. "Claim servicing agency" means the Hartford affiliated third party administrator (TPA) Specialty Risk Services, which has been designated under contract by you to handle "claims" to which this policy applies.

6. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c. All parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

    Provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits, according to the substantive law in such territory, or in a settlement we agree to.

7. "Druggists products hazard" includes:

    a. All "bodily injury" occurring away from premises you own or rent and arising out of "your druggists product" except products that are still in your physical possession; and

    b. All "bodily injury" caused by the rendering of influenza vaccinations:

      (1) To your customers on your premises; and

      (2) During the course of your normal "insured retail drug operations;"

    When performed by others under the terms of an "insured contract."

8. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "First named insured" means the person or entity first named in Item 1. of the Declarations of this policy.

11. "Impaired property" means tangible property, other than "your druggists product," that cannot be used or is less useful because:

    a. It incorporates "your druggists product" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your druggists product;" or

    b. Your fulfilling the terms of the contract or agreement.

12. "Insured Contract" means that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

13. "Insured retail drug operations" means:

    a. Retail drug operations owned by you;

    b. Retail drug operations trading under your name; or

    c. A retail drug operation whose business assets you acquire during the "policy period."

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

14. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include "temporary worker."

15. "Occurrence" means, with respect to "bodily injury," an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   a. All "claims" for damages or "claim expenses" arising out of one prepared lot of "your druggists product;" or

   b. All acts or omissions together with all related acts or omissions in the furnishing of "your druggists product" to any one person

   Shall be considered as arising out of one "occurrence."

16. "Policy period" means the period beginning with the inception date shown in the Declarations and ending with the earlier of:

   a. The date of cancellation of this policy; or

   b. The expiration date shown in the Declarations.

17. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

18. "Self-insured retention" refers to the amount(s) set forth in the Declarations as such, and is defined below:

   a. As respects the Druggist Products Aggregate Retention, "self-insured retention" means the amount you or any insured must pay as damages or "claim expenses" for all "occurrences" taking place during the "policy period" and arising out of the "druggists products hazard;"

   b. Subject to a. above, as respects the Each Occurrence Retention, "self-insured retention" means the amount you or any insured must pay as damages or "claim expenses" for any one "occurrence," respectively, before we will pay anything.

   Your obligation to pay the "self-insured retention" shall apply fully and separately to each "policy period" and shall not be reduced by:

   a. The payment of any deductible amount, any participation of the insured or any amount retained by the insured under any other policy of insurance for any other applicable "policy period;"

   b. Any payment made on your behalf by another, except our "claim servicing agency," including any payment from any other applicable insurance; or

   c. Any "claim expenses" or any other defense costs.

19. "Suit" means a civil proceeding in which damages because of "bodily injury" to which this policy applies are alleged.

   "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

20. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

21. "Your druggists product" means:

   a. Prescription drugs and medicines prepared, sold, handled distributed or disposed of by you from your "insured retail drug operations;" and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such prescription drugs or medicines

   after your physical possession of such items has been relinquished to others.

   "Your druggists product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in a. or b. above; and

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

b.   The rendering or failure to render pharmacists' professional services consisting of warnings or instructions that you provide or fail to provide for any of the items included in a. or b. above.

"Your druggist product" does not include vending machines or other property rented to or located for the use of others but not sold.

## SECTION VI - NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

1.  This policy does not apply:

    a.  To any injury or damage:

        (1)  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    b.  To any injury or damage resulting from the "hazardous properties" of "nuclear material," if:

        (1)  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

        (2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (3)  The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this exclusion:

    "Hazardous properties" include radioactive, toxic or explosive properties.

    "Nuclear material" means "source material," "special nuclear material" or "by-product material."

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

    "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    "Nuclear facility" means:

    (a) Any "nuclear reactor;"

    (b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

    (c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than  250 grams of uranium 235;

    (d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

**EXCESS DRUGGISTS LIABILITY**
**INSURANCE POLICY**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Injury or damage includes all forms of radioactive contamination of property.

We have caused this policy to be signed by our President and a Secretary, but it shall not be binding unless countersigned on the Declarations page by our duly authorized representative.

David Zwiener, President

Brian S. Becker, Secretary

**Policy Number:** 20 ECS D70784          **Effective Date:** 01/01/2014          

**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.

**Endt. No.**  2                              3200 FLIGHTLINE DRIVE
                                              P.O. BOX 32016
                                              LAKELAND, FL 33802

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INSTALLMENT PAYMENT PLAN

We and you agree that you will pay the premium in installments as shown below:

| Date | Premium | Date | Premium |
|------|---------|------|---------|
| 01/01/2014 | $826. | 07/01/2014 | $834. |
| 02/01/2014 | $834. | 08/01/2014 | $834. |
| 03/01/2014 | $834. | 09/01/2014 | $834. |
| 04/01/2014 | $834. | 10/01/2014 | $834. |
| 05/01/2014 | $834. | 11/01/2014 | $834. |
| 06/01/2014 | $834. | 12/01/2014 | $834. |

**Form GN 99 01 13 (ED. 10/91)** Printed in U.S.A. (NS)



**Policy Number:** 20 ECS D70784          **Effective Date:** 01/01/2014

**Named Insured and Address:**

**Endt. No.** ___3___

PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
P.O. BOX 32016
LAKELAND, FL 33802

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BROAD FORM NAMED INSURED

1. Item 1. (Named Insured) of the Declarations page is amended to read:

    PUBLIX SUPER MARKETS, INC.
    PUBLIX ALABAMA, LLC
    REAL SUB, LLC
    PUBLIX ASSET MANAGEMENT COMPANY
    PUBLIX TENNESSEE, LLC
    MORNING SONG, LLC
    PTO, LLC
    PUBLIX DIRECT, LLC


    IT IS FURTHER AGREED THAT IF THE INSURED HAS OTHER INSURANCE AGAINST A LOSS COVERED
    BY THIS ENDORSEMENT, THE INSURANCE AFFORDED BY THIS ENDORSEMENT SHALL NOT APPLY TO
    THE EXTENT THAT ANY VALID AND COLLECTIBLE INSURANCE, WHETHER ON A PRIMARY EXCESS OR
    CONTINGENT BASIS IS AVAILABLE TO THE INSURED.

2. The following is also considered to be a Named Insured under the policy:

    Any subsidiary:

    a. Of any corporation named in 1.a. above; or

    b. Owned by a parent corporation that is a Named Insured, or subsidiary thereof, and has a financial interest
       of more than 50% of the voting stock.

3. The insurance afforded herein for any subsidiary under 2. above does not apply if there is similar coverage
   available to that organization, or if similar coverage would have been available but for the exhaustion of its
   limits.

   Paragraphs 2. and 3. above do not apply to newly acquired organizations and the provisions in paragraph 4. of
   Section II - Who Is An Insured of the policy shall apply to such newly acquired organizations.

**Form GN 25 34 14 (ED. 06/01)**          **Page 1 of 1**

(c) 2001, The Hartford
(Includes copyrighted material of Insurance Services Office
with its permission. Copyright, Insurance Services Office, Inc., 1998)

**Policy Number:** 20 ECS D70784   **Effective Date:** 01/01/2014

**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
**Endt. No.** ____4____   P.O. BOX 32016
LAKELAND, FL 33802



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

| SCHEDULE | | | |
|---|---|---|---|
| Specific Coverage(s) To Which Deductible Applies (Designated by an "X" Below:) | Amount and Basis of Deductible Application | | |
| | Any One "Claim," If Any | Any One "Occurrence" and/or "Offense," If Any | Aggregate Applicable To Specific Coverage(s), If Any |
| [x]   "Bodily Injury" | | $100,000 | |
| [ ]   "Property Damage" | | | |
| [ ]   "Personal and Advertising Injury" | | | |
| [ ]   "Employee Benefits Injury" | | | |
| DESIGNATED COVERAGES COMBINED | | | |

APPLICATION OF ENDORSEMENT: Enter below any modifications on the application of this endorsement. If no modification is entered, the deductible(s) set forth in the SCHEDULE apply to damages and "claim expenses" for all "bodily injury," "property damage," "personal and advertising injury," or "employee benefits injury," to which this policy applies, however caused:

1. Subject to the Limits of Liability and all other terms and conditions of this policy, our obligation to pay damages and "claim expenses" on your behalf applies only to the amount of damages and "claim expenses" in excess of any deductible amounts set forth in the SCHEDULE as applicable to such Coverages.

2. You may select for any one Specific Coverage or DESIGNATED COVERAGES COMBINED:

   a. An Any One "Claim" deductible ("Claim" deductible);

   b. An Any One "Occurrence" and/or "Offense" deductible ("Occurrence"/"Offense" deductible); or

   c. The option to have both a "Claim" deductible and an "Occurrence"/"Offense" deductible.

   You may choose to make a., b. or c. subject to an Aggregate deductible. Your choices of deductible amounts and coverages are shown on the SCHEDULE above.

**Form GN 03 29 15 (ED. 12/98)**   (c) 1998, The Hartford   **Page 1 of 2**

3. If the deductible amount indicated in the SCHEDULE above applies on a per "claim" basis (option a. of subsection 2. above) the deductible applies as follows:

   a. To all damages and "claim expenses" arising out of "bodily injury," "property damage," "personal and advertising injury" or "employee benefits injury" to which this policy may apply as a result of any one "claim;"

   b. Under DESIGNATED COVERAGES COMBINED, to all damages and "claim expenses" arising out of "bodily injury," "property damage," "personal and advertising injury" or "employee benefits injury" to which this policy may apply as a result of any one "claim"

   regardless of the number of persons or organizations who sustain damages because of that one "claim."

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a "claim" for such damages.

4. If the deductible amount indicated in the SCHEDULE above applies on a per "occurrence" and/or "offense" basis (option b. of subsection 2. above) the deductible applies as follows:

   a. To all damages and "claim expenses" arising out of a "bodily injury" or "property damage" to which this policy may apply as a result of any one "occurrence;"

   b. To all damages and "claim expenses" arising out of "personal and advertising injury" or "employee benefits injury," to which this policy may apply as a result of any one "offense;" or

   c. Under DESIGNATED COVERAGE COMBINED, to all damages and "claim expenses" arising out of "bodily injury," "property damage," "personal and advertising injury" or "employee benefits injury" to which this policy may apply as a result of any one "occurrence" or "offense"

   regardless of the number of persons or organizations who sustain damages because of that one "occurrence" and/or "offense."

5. If the deductible amount indicated in the SCHEDULE above applies on a per "claim" and per "occurrence" and/or "offense" basis (option c. of subsection 2. above):

   a. The deductible amount applicable to each "claim" is as set forth in 3. above; however,

   b. The maximum deductible applicable to each "occurrence" and/or "offense," regardless of the number of "claims," shall be determined as set forth in 4. above.

6. However, the amount(s) to be deducted during the "policy period" for any one Specific Coverage or DESIGNATED COVERAGES COMBINED, under option 3., 4. or 5. above shall not exceed the amount, if any, set forth as Aggregate as applicable to such Specific Coverage or DESIGNATED COVERAGES COMBINED.

7. Subject to 6. above, the respective Limits of Liability applicable to each "occurrence" or each "offense" shall be reduced by the application of the deductible in 3., 4. or 5. above.  Likewise, the Aggregate Limits of Liability set forth by an "X" below shall be reduced by such application:

   ☐  General Aggregate

   ☐  Products-Completed Operations Aggregate

   ☒  Other: EXCESS DRUGGIST LIABILITY

8. The terms of this policy, including those with respect to (a) our rights and duties to defend any "claim" or "suit" seeking such damages, and (b) your duties in the event of an "occurrence," "offense," "claim" or "suit" apply irrespective of the deductible amount.

9. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**Form GN 03 29 15**                                                                                                              **Page 2 of 2**

**Policy Number:** 20 ECS D70784          **Effective Date:** 01/01/2014

**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.
                                 3200 FLIGHTLINE DRIVE
**Endt. No.** ___5___            P.O. BOX 32016
                                 LAKELAND, FL 33802



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF DEFINITION - DRUGGISTS PRODUCTS HAZARD

The definition of "druggists products hazard" (SECTION V - DEFINITIONS) is replaced by the following:

7.  "Druggists products hazard includes"

    a.  All "bodily injury" occurring away from premises you own or rent and arising out of "your druggists product", except products that are still in your physical possession; and

    b.  All  "bodily injury" caused by vaccinations, bone density testing and cholesterol testing:

        (1) Of customers on your premises; and

        (2) During the course of your normal "insured retail drug operations";

        when performed by you, or by others under the terms of an "insured contract".

(c) 2007, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Policy Number:** 20 ECS D70784     **Effective Date:** 01/01/2014

**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
**Endt. No.**   6     P.O. BOX 32016
LAKELAND, FL 33802



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF SECTION II - WHO IS AN INSURED JOINT VENTURES AND PARTNERSHIPS

It is agreed:

1. With respect to any "joint venture" of which you are or were a participant:

   a. Only you shall be deemed to be a Named Insured; and

      (1) No other participant shall be an insured; and

      (2) The insurance available under this policy to you with respect to the operations of the "joint venture" shall be excess over any other valid and collectible insurance applicable to the "joint venture" and shall not contribute therewith.

   b. Paragraph a. above does not apply to:

      (1) "Bodily injury" or "property damage" that occurred; or

      (2) "Personal and advertising injury" arising out of an "offense" committed

      before you formed the "joint venture".

2. The last paragraph of WHO IS AN INSURED (Section II) does not apply to any "joint venture" of which you are deemed to be a Named Insured in paragraph 1. of this endorsement.

3. The following definition is added to Definitions (Section V):

   "Joint venture" means any joint venture, co-venture, or partnership, none of which is either incorporated, nor otherwise affords limited liability to an insured having an interest in them.

**Form GT 04 02 13 (ED. 02/06)**                                                            **Page 1 of 1**

(c) 2006, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**Policy Number:** 20 ECS D70784          **Effective Date:** 01/01/2014



**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.
                                  3200 FLIGHTLINE DRIVE
**Endt. No.**   7                 P.O. BOX 32016
                                  LAKELAND, FL 33802

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ALL HAZARDS IN CONNECTION WITH DESIGNATED PREMISES

### SCHEDULE

**Description and Location of Premises:**

LONE PALM GOLF CLUB, LLC
800 LONE PALM DRIVE
LAKELAND, FL 33802

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This policy does not apply to any injury or damages arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule or any property located on these premises;

**2.** Operations on those premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of such premises; or

**3.** Goods or products manufactured at or distributed from such premises.

**Form GN 21 00 13 (ED. 10/91)**   Printed in U.S.A. (NS)

(c) 1991, The Hartford
(Includes copyrighted material of Insurance Services Office
with its permission. Copyright, Insurance Services Office, Inc., 1984)

**Policy Number:**  20 ECS D70784       **Effective Date:** 01/01/2014

**Named Insured and Address:**   PUBLIX SUPER MARKETS, INC.
                                 3200 FLIGHTLINE DRIVE
**Endt. No.**   8                P.O. BOX 32016
                                 LAKELAND, FL 33802

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PROFESSIONAL HEALTH CARE SERVICES

The following is added to Paragraph 2., Exclusions, of SECTION I - COVERAGES:

2. Exclusions

   This policy does not apply to:

   "Bodily injury" arising out of the providing of or failure to provide professional health care services, other than professional health care services rendered as a pharmacist.

**Form ET 50 02 11 07**                                    **Page 1 of 1**

(c) 2007, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Policy Number:** 20 ECS D70784     **Effective Date:** 01/01/2014

**Named Insured and Address:** PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
P.O. BOX 32016
LAKELAND, FL 33802



# CONFIRMATION OF COVERAGE ELECTION - TERRORISM RISK INSURANCE ACT

We have previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make terrorism coverage available in the policies we offer.

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" includes the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and
2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and
3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to certified acts of terrorism that exceeds the applicable insurer deductible. However, if aggregate insured losses under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

At that time we advised you that the premium for such terrorism coverage would be $0.

**Please be advised that this premium charge may be adjusted at audit if applicable.** As a result of our notification, you have made the following election:

**Accepted Terrorism Coverage:** ☐

**Rejected Terrorism Coverage:** ☒

**Form GN 98 47 17 (ED. 03/12)**

**TERRORISM EXCLUSION ON YOUR BINDER AND/OR POLICY AND ITS RENEWALS**

If the "Rejected Terrorism Coverage" box above is checked, you have previously rejected such coverage by signing a written rejection statement and returning such document to us.

By doing so you authorized the attachment of terrorism exclusion(s) to your binder and/or, policy and to all subsequent renewals.  Unless you contact your agent, broker or representative and accept coverage prior to the inception of your renewal policy, the terrorism exclusion(s) will apply to all subsequent renewals.

**Policy Number:** 20 ECS D70784          **Effective Date:** 01/01/2014



**Named Insured and Address:** PUBLIX SUPER MARKETS, INC.
3200 FLIGHTLINE DRIVE
P.O. BOX 32016
LAKELAND, FL 33802

**Endt. No.**    10

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** The following exclusion is added:

This policy does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

  **1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any policy to which this endorsement applies, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury", "wrongful acts" or "environmental damage" as may be defined in any such policy.

  **2.** A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under (TRIA). The criteria contained in TRIA for a "certified act of terrorism" includes the following:

  **a.** The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

  **b.** The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States missions; and

  **c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of coverage for terrorism, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the War Exclusion...

**Form GS 21 73 03 12**                                              **Page 1 of 1**

© 2012, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)



# IMPORTANT NOTICE TO POLICYHOLDERS WITH PREMISES OR OPERATIONS IN FLORIDA

## FLORIDA HURRICANE CATASTROPHE FUND EMERGENCY ASSESSMENT

The Florida Office of Insurance Regulation has levied an emergency assessment on direct written premiums for all property and casualty lines of business in Florida.

This emergency assessment is to fund obligations, costs and expenses of the Florida Hurricane Catastrophe Fund and the Florida Hurricane Catastrophe Fund Corporation.

This emergency assessment is 1.3%, and applies to all subject policies effective on or after January 1, 2011.

We are required by statute and order to collect this emergency assessment from policyholders, and remit it to the State.

This assessment for your policy appears as **2011 FHCF EMER ASSESS CL**.

© 2011, The Hartford

**POLICY NUMBER:** 20 ECS D70784



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

A. Paragraph b. of the CANCELLATION Policy Condition is replaced by the following:

b. (1) CANCELLATION FOR POLICIES IN EFFECT 90 DAYS OR LESS

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the "first named insured" written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

(i) A material misstatement or misrepresentation; or

(ii) A failure to comply with underwriting requirements established by the insurer.

(2) CANCELLATION FOR POLICIES IN EFFECT FOR MORE THAN 90 DAYS

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The policy was obtained by a material misstatement or misrepresentation;

(c) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

(d) A substantial change in the risk covered by the policy; or

(e) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the "first named insured" written notice of cancellation, accompanied by the reasons for cancellation, at least:

(i) 10 days before the effective date of cancellation if we cancel for nonpayment of premiums; or

(ii) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in b.(2) above.

B. Paragraph e. of the CANCELLATION Policy Condition is replaced by the following:

e. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.  The cancellation will be effective even if we have not made or offered a refund.

C. The following is added and supersedes any other provision to the contrary:

WHEN WE DO NOT RENEW

1. If we decide not to renew this policy we will mail or deliver to the "first named insured" written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the "first named insured's" last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Form GN 02 20 15 (ED. 11/06)**

**Page 1 of 1**

© 2006, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at -- http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

**Policy Number:** 20 ECS D70784     **Effective Date:** 01/01/2014



**Named Insured and Address:**    PUBLIX SUPER MARKETS, INC.

**Endt. No.**    14       3200 FLIGHTLINE DRIVE
P.O. BOX 32016
LAKELAND, FL 33802

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

The following War Exclusion applies to all coverages afforded under this policy, and applies as an additional exclusion or a replacement of any existing War exclusion(s):

**War Exclusion**

This insurance does not apply to:

Any injury or damage, however caused, arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**Form GN 23 62 13  (ED. 02/03)**        **Page 1 of 1**

(c) 2003,  The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Policy Number:**  20 ECS D70784



### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MANDATORY ENDORSEMENT

We have caused this policy to be signed by our President and Secretary.  Where required by law, the Declarations page has been countersigned by our duly authorized representative.

Terence Shields, Secretary

André A. Napoli, President

**Form GN 99 99 14 (ED.12/06)**                                                                    Page 1 of 1

© 2006, The Hartford



# IMPORTANT STATE INFORMATION

### FRAUD WARNING STATEMENTS

ARKANSAS, DISTRICT OF COLUMBIA, FLORIDA, KENTUCKY, LOUISIANA, MAINE, NEW JERSEY, NEW MEXICO, PENNSYLVANIA, TENNESSEE, VIRGINIA AND WEST VIRGINIA APPLICANTS:

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTE:  IN LOUISIANA, MAINE, TENNESSEE, VIRGINA AND THE DISTRICT OF COLUMBIA, PENALTIES MAY ALSO INCLUDE THE DENIAL OF INSURANCE BENEFITS.

COLORADO APPLICANTS:  IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

HAWAII APPLICANTS:  FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH.

MARYLAND:  ANY PERSON WHO KNOWINGLY AND WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY AND WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NEW YORK APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR SUCH VIOLATION.

OHIO APPLICANTS:  ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

© 2008, The Hartford

**OKLAHOMA APPLICANTS**:  WARNING:  ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**OREGON APPLICANTS**:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD OR SOLICIT ANOTHER TO DEFRAUD AN INSURER: (1) BY SUBMITTING AN APPLICATION OR; (2) FILING A CLAIM CONTAINING A FALSE STATEMENT AS TO ANY MATERIAL FACT MAY BE VIOLATING STATE LAW.



**PRODUCER COMPENSATION NOTICE**

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

**Form G-3418-0**