# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PUBLIX SUPER MARKETS, INC.,

     Plaintiff,

v.                           Case No: 8:22-cv-2569-CEH-AEP

FIREMAN'S FUND INSURANCE
COMPANY and NATIONAL
SURETY CORPORATION,

     Defendants.

_____

## <u>ORDER</u>

This cause comes before the Court on the Motion to Dismiss, or, in the alternative, Motion for a More Definite Statement (Doc. 128), filed by Defendants Fireman's Fund Insurance Company and National Surety Corporation ("Certain Excess Insurers" or "CEI").  In this insurance action, Publix Super Markets, Inc. ("Publix") seeks declaratory relief regarding various insurers', including CEI's, duty to defend and indemnify it in pending and forthcoming lawsuits related to its opioid prescribing practices.  Publix also alleges that the insurers have breached or repudiated their insurance contracts.

In its motion to dismiss, CEI argues that the claims that relate to its policies are unripe and lack subject matter jurisdiction, because they are excess insurers and Publix does not allege that the primary policies have been exhausted.  In the alternative, they argue that the complaint is a shotgun pleading because it does not provide adequate

details regarding each Defendant's alleged actions or obligations.   Publix has responded in opposition (Doc. 150), and CEI has replied (Doc. 164).

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion to the extent that it will dismiss without prejudice Counts II and III with respect to CEI, and stay Count IV with respect to all Defendants.

## I.   BACKGROUND[1]

On November 11, 2022, Publix initiated a lawsuit against nineteen Defendants, all insurance companies with which Publix alleges it held policies between 1995 and 2018. Docs. 1, 11, 11-1.  Two Defendants, the Hartford Fire Insurance Company and Twin City Fire Insurance Company, issued Publix primary general and druggists' liability policies (the "primary policies") during this time. Doc. 11 ¶ 38; Doc. 11-1. The remainder of the policies were umbrella or excess policies that followed from the primary policies, only coming into effect when the underlying coverage of the primary policies was exhausted. *Id.*; Doc. 11 ¶¶ 39, 57, 58.

Publix alleges that the primary policies provide a duty to defend it against bodily injury claims, and to indemnify it against such claims once it satisfies a self-insured retention, or "SIR." *Id.* ¶ 38.  In addition, "many of the Primary Policies" also required Publix to pay "a deductible designed to match the policy limit and providing for

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d).

reimbursement to the Primary Insurers of any payments made under the Primary Policies." *Id.* ¶ 39.  In such cases, Publix alleges that the umbrella and excess policies provide its "real" insurance coverage. *Id.*

As an example of an umbrella policy, the Liberty Mutual Umbrella Policy provided that Liberty Mutual had a duty to defend Publix when the primary policy was exhausted by payment of judgments or settlements, or when the damages sought would not be covered by the primary policy. *Id.* ¶ 57.  The policy also stated that its coverage would be no broader than the coverage provided by the underlying (primary) policy. *Id.* ¶ 56.

Publix identified an ACE Property and Casualty Insurance Company policy as an example of an excess policy, which would come into effect when Publix became legally obligated to pay damages in excess of the primary and umbrella policy limits. *Id.* ¶¶ 58-59.  Upon exhaustion of the underlying coverage, ACE had "a right and duty to defend" Publix against any lawsuit "seeking damages for 'bodily injury'…even if groundless, false, or fraudulent." *Id.* ¶ 64.

Since approximately 2017, Publix has been named as a defendant in approximately 61 lawsuits relating to its pharmacies' opioid prescription practices over the past several decades. *Id.* ¶¶ 70-71.  Eight of those suits have been dismissed. *Id.* The opioid lawsuits typically seek damages against Publix and other retail pharmacies for bodily injuries and other liabilities arising out of the nation's opioid crisis. *Id.* ¶ 72. Publix alleges that it has incurred "millions of dollars in defense costs" in connection

with the opioid lawsuits. *Id.* ¶ 82.  It expects to continue to incur legal expenses as additional lawsuits are filed. *Id.* ¶ 83.

Publix contacted all Defendants in April 2021 to request defense and indemnity coverage for the opioid lawsuits. *Id.* ¶ 84.  It alleges that each Defendant "either denied coverage, or, based upon its articulated coverage positions, is reasonably expected to deny coverage[.]" *Id.* ¶ 85.  The insurers "den[ied] coverage and/or reserv[ed their] rights," on the ground that the policies did not cover the alleged conduct or relief sought. *Id.* ¶¶ 87-88.  To date, Publix alleges that no Defendant "has paid any amount to Publix for the defense of the Opioid Lawsuits or affirmatively acknowledged any obligation to provide coverage" under any policy. *Id.* ¶ 92.

Publix seeks two types of relief in the instant action.  First, it alleges a cause of action for breach of contract against the primary insurers (Count I), and anticipatory breach of contract against the umbrella and excess insurers (Count II), for their failure to defend and indemnify it, or to acknowledge their duty to defend and indemnify it. *Id.* ¶¶ 94-110.  Second, Publix seeks declaratory judgments that all Defendants have a duty to defend (Count III) and indemnify (Count IV) it in the opioid lawsuits. *Id.* ¶¶ 111-126.

Two Defendants, Fireman's Fund Insurance Company and National Surety Corporation, who refer to themselves as "Certain Excess Insurers,"[2] now move to

---

[2] Publix refers to these Defendants as "Allianz," the name of their common corporate parent. Doc. 150 at 2 n.1.  Publix explains that they used this name in their prior correspondence with Publix, acting as a single entity. *Id.*  The Court refers to them, collectively, as CEI.

dismiss. Doc. 128.  The Amended Complaint identifies Fireman's Fund as the holder of 11 of Publix's excess insurance policies, and does not attribute any known Publix policies to National Surety. *See* Doc. 11-1.  In the motion, CEI points out that Publix does not allege that any of the opioid lawsuits against it have resulted in settlements or judgments, nor that it has exhausted any of the primary or umbrella policies' coverage. Doc. 128 at 2-3.  Because there has been no exhaustion, CEI argues that its policy coverage has not been triggered and no present controversy exists. *Id.*  As a result, the Court lacks subject matter jurisdiction over the claims against CEI under Article III of the United States Constitution. *Id.*  Even if the Court had subject matter jurisdiction, CEI urges it to decline to review the claims because they are unripe and speculative. *Id.* at 3-4.  In the alternative, CEI moves to dismiss the Amended Complaint or for a more definite statement under Federal Rules of Civil Procedure 12(b)(6) and 12(e), arguing that it is a shotgun pleading that fails to differentiate between Defendants and adequately articulate the relief Publix seeks from each one or the facts on which that relief is based. *Id.* at 4.

Responding in opposition, Publix attaches letters that CEI sent it in 2020 and 2021, which Publix characterizes as claim denials. Docs. 150, 150-2, 150-3.  Publix argues that the letters may be considered on a motion to dismiss because they cannot be disputed and are central to the claims, and therefore are incorporated by reference into the Amended Complaint. Doc. 150 at 5.  Publix asserts that the letters demonstrate there is a live, actual controversy between the parties regarding CEI's duties: the coverage denial is itself an anticipatory breach of contract, which gives rise

to an immediate cause of action. *Id.* at 12, 14-15, 18-19.  Moreover, contingent liability does not necessarily defeat subject matter jurisdiction where the likelihood that the contingencies will occur is high, as it is in this case. *Id.* at 13-15.  Publix further contends that principles of judicial economy and efficiency counsel in favor of exercising jurisdiction for all the insurers at once rather than litigating the same issues piecemeal. *Id.*  Finally, it argues that its complaint is not a shotgun pleading, because the exhibits adequately place each insurer on notice of the claims against it—as demonstrated by the fact that all other Defendants filed an answer and several filed counterclaims. *Id.* at 20-21.  In any event, CEI's letters show that it was fully aware of the claims Publix is asserting before the litigation even began. *Id.*

In reply, CEI first argues that its 2020 and 2021 letters are improper extrinsic evidence that cannot be considered on a motion to dismiss, because the allegations in the Amended Complaint are too vague to reference them. Doc. 164 at 2-3.  Even if they could be considered, however, the letters are reservations of rights rather than claim denials. *Id.* at 4.  Finally, CEI asserts that Publix does not dispute that its underlying coverage has not been exhausted and that no duty to defend or indemnify on CEI's part can attach until that has occurred. *Id.* at 4-5.  CEI also points out that all pending opioid lawsuits against Publix except one are stayed. *Id.* at 1, citing Doc. 152 ¶ 14 (Publix admission in answer to counterclaim).

6

## II.    RIPENESS AND SUBJECT MATTER JURISDICTION

First, CEI contends that each of the three claims against it is premature and unripe, such that the Court lacks subject matter jurisdiction.  The Court's jurisdiction over each count will be addressed in turn.

### A. Legal Standard

Under Rule 12(b)(1), Federal Rules of Civil Procedure, a party may raise, by motion, the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  A defendant may attack subject matter jurisdiction in two manners: facially or factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999).  A factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered,'" *Lawrence*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980),[3] while a facial attack merely requires a court to assess, while assuming the allegations of the complaint are true, whether the complaint sufficiently alleges a basis for jurisdiction, *McElmurray v. Consolid. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007), quoting *Lawrence v. Dunbar*, 919 F.2d at 1529.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Article III of the Constitution limits the subject matter jurisdiction of the district courts to "cases and controversies." U.S. Const. art. III, s. 2.  For claims brought under the Declaratory Judgment Act, the statutory equivalent of Article III's "cases and controversies" requirement is that an "actual controversy" must exist. *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981).  The Declaratory Judgment Act provides, "In a case of actual controversy...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Thus, whether an "actual" or "justiciable" controversy exists is a threshold question that determines jurisdiction in a declaratory judgment action. *Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (internal quotation marks omitted).

Moreover, even where the "judicial minimum" of a ripe controversy is met from a constitutional and statutory perspective, the ripeness doctrine "counsels judicial restraint" as a prudential matter. *Progressive Mountain Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 734 (11th Cir. 2020) (citations and quotations omitted).

**B. <u>Discussion</u>**

**1. Duty to Indemnify (Count IV)**

Count IV requests a declaratory judgment that all Defendants have a duty to indemnify Publix in the opioid lawsuits.  To satisfy the "actual controversy"

requirement, a controversy "must be definite and concrete, touching the legal relations of the parties having adverse interests." *United States Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) (citation and quotations omitted). Courts are not permitted to issue advisory opinions that address "what the law would be upon a hypothetical set of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). As a result, the controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). "The remote possibility that a future injury may happen is not sufficient[.]" *Id.* On the other hand, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction... Rather, the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995) (quotations and citations omitted).

In *GTE*, for example, the Eleventh Circuit held that an actual controversy existed because the practical likelihood of the contingencies occurring was high—in fact, "all but certain"—at the time the complaint was filed. *Id.* at 1569-70. The plaintiff sought a declaration regarding the effect of prior litigation on its right to contact the defendant's customers. *Id.* at 1568. The defendant interpreted a prior court decision to hold that any such contact would constitute tortious interference with defendant's business relations, and made clear it would not hesitate to sue if the plaintiff contacted them. *Id.* The court found that the circumstances presented a justiciable controversy,

and that the plaintiff was not required to contact the defendant's customers and subject itself to potential liability before an actual controversy would exist. *Id.*

In contrast, there was no justiciable controversy in *Odyssey Marine Expl., Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890 (11th Cir. 2013), where a shipwreck researcher named Bray sought a declaratory judgment regarding the status of his contract with an underwater salvage company with respect to a particular shipwreck, the *Merchant Royal*, which was believed to be worth tens of millions of dollars. Rejecting Bray's argument that it was "sufficiently likely" that the salvagers would soon find the *Merchant Royal* to create a "real, substantial controversy" between the parties, the Eleventh Circuit instead upheld the district court's finding that an actual controversy would not exist until the salvagers' discovery of the *Merchant Royal* and their refusal of Bray's attempt to collect on the disputed contract. *Id.* at 895. In the meantime, Bray's "request for a declaratory judgment remains a premature and hypothetical attempt to preempt [the salvagers'] contingent defense in Bray's contingent lawsuit to establish Bray's contingent entitlement to a 7.5% share in the event of the contingent salvage of the *Merchant Royal* [… resulting in a] piling on of contingencies [that] falls short of the requirements for establishing an actual case or controversy[.]" *Id.* In other words, although the parties disagreed about the contract, the practical likelihood of the contingencies occurring that would render their dispute consequential was too remote to confer jurisdiction.

In the context of insurance disputes, courts in the Eleventh Circuit have broadly agreed that declaratory relief regarding an insurance company's duty to indemnify an

insured in a pending lawsuit is unripe until the conclusion of the underlying litigation, because it is unknown whether indemnification will be necessary. *See Sullivan v. Everett Cash Mut. Ins. Co.*, No. 19-11943, 2023 WL 1521579, *4 (11th Cir. Feb. 2, 2023) (recognizing that "in this circuit, a declaratory judgment claim with respect to indemnification is generally not ripe until (and if) the insured has been held liable to a third party"); *Mid-Continent Casualty Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (district court did not abuse its discretion in concluding that duty to indemnify was not ripe until underlying lawsuit was resolved or insured's liability was established); *First Mercury Ins. Co. v. First Florida Building Corp.*, No. 8:20-cv-1929, 2022 WL 4017061, *9 (M.D. Fla. Sept. 2, 2022) (Honeywell, J.) (collecting cases in which district courts dismissed without prejudice or stayed duty to indemnify claims).  Courts have reasoned that there is no judgment *to* indemnify unless and until the insured's liability is established in the underlying litigation, rendering declaratory relief regarding indemnification premature and speculative. *See id.*  After all, any duty to indemnify remains "prospective and speculative" unless there is a settlement or other judgment entered against the insured. *RLI Ins. Co. v. Coastline Title of Pinellas, LLC*, No. 8:20-cv-786, 2020 WL 9172022, *2 (M.D. Fla. Oct. 21, 2020).[4]

---

[4] Courts have also observed that it is impractical to attempt to resolve an insurer's duty to indemnify before the conclusion of the underlying litigation, because the duty to indemnify—unlike the duty to defend—turns on the actual facts determined in the lawsuit rather than the "eight corners" of the policy and complaint. *See Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318 (11th Cir. 2014); *cf.* Doc. 150 at 17.

Here, too, the Court agrees with CEI that Publix's request for a declaratory judgment that CEI—or any Defendant—has a duty to indemnify it in the opioid lawsuits is premature and unripe.  Publix's allegations make clear that it has neither been found liable in nor settled any of the actions against it; nor do the allegations provide a basis for finding a substantial likelihood that it will.  As such, the relief Publix is asking for in this count amounts to an impermissible advisory opinion rather than adjudication of an actual controversy.  The Court will therefore stay Count IV, as to all Defendants, until and unless Publix is subject to a settlement or judgment in at least one of the opioid lawsuits.

## 2.  Duty to Defend (Count III)

### a.  Legal Background

Count III requests a declaratory judgment that all Defendants have a duty to defend Publix in the opioid lawsuits.  Whether a declaratory judgment regarding an insurer's duty to defend presents a justiciable controversy turns on the likelihood that a true dispute exists regarding coverage, as well as the likelihood that the resolution of the dispute will have a tangible impact on the insurer's obligations.

First, where the insurance company has not denied a claim or otherwise repudiated coverage for an incident, courts have found that an insurance dispute is too speculative or prospective to present an actual controversy for jurisdictional purposes.  In *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414-15 (11th Cir. 1995), the insured filed a declaratory judgment action regarding coverage of an incident about which it had mailed notice to the insurance companies the day before; as a result,

"[t]he insurers not only had no chance to respond to AGL's notice before the complaint was filed, they had no knowledge that notice had been given."   The Eleventh Circuit held that "[r]egardless of how well-founded AGL's concerns about its insurers may have been, speculation" about how the insurers would handle the claim did not suffice to establish either an actual or threatened injury at the time the complaint was filed. *Id.* at 415.   The court rejected the insured's argument that the insurance companies' denial of coverage to "similar utilities under similar circumstances in the past" created a sufficient likelihood that they would deny coverage to plaintiff. *Id.*; *see also Cummings v. State Farm Mut. Auto. Ins. Co.*, 323 F. App'x 847, 847-48 (11th Cir. 2009) (the complaint did not plead a justiciable controversy where it did not allege that the insurance company denied the claim or threatened to deny the claim); *Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F.Supp.2d 1338, 1345 (M.D. Fla. 2012) (dismissing insured's third-party complaint against excess insurer that did not allege, *inter alia*, that the insured requested the excess insurer provide a defense or that the insurer denied any such request).   In contrast, an actual controversy may exist where an insurer has denied coverage. *See Great Lakes Reinsurance (UK) PLC v. Unplugged, LLC*, No. 6:17-cv-2027, 2018 WL 11482218, *3 (M.D. Fla. July 16, 2018) (declaratory judgment was clearly ripe where insurer filed it after sending a letter to insured denying coverage of the incident).

Excess insurance policies present greater uncertainty.   An insurer's obligations under an excess policy typically are not triggered unless coverage is exhausted under an underlying, or primary, policy. *See Admiral's Port Condo. Ass'n., Inc. v. Endurance Am.*

*Specialty Ins. Co.*, No. 22-23408-CIV, 2023 WL 2760076, *4 (S.D. Fla. March 16, 2023).  However, some courts have held that a coverage dispute is ripe, irrespective of exhaustion of the underlying policy, if the excess insurer has either denied coverage or formally taken the position that it has no duty to defend. *See Travelers Prop. Cas. Co. of AM. v. H.E. Sutton Forwarding Co., LLC*, 620 F.Supp.3d 1165, 1170 (M.D. Fla. 2022) (duty to defend claim against excess insurer was ripe despite lack of exhaustion of underlying policy where excess insurer formally denied coverage in the underlying action); *Essex Ins. Co. v. Littlejohn*, No. 1:15-cv-897, 2016 WL 5340543, *4 (N.D. Ga. Feb. 12, 2023) (excess insurance company's denial of coverage and insured's denial of many factual allegations in the insurer's complaint demonstrated the existence of an actual case or controversy); *see also S. Owners Ins. Co. v. P&T Lawn & Tractor Serv., Inc.*, No. 2:22-cv-439, 2023 WL 2391711, *4 (M.D. Fa. March 7, 2023) (where excess insurer moved for declaratory judgment and stated it had no duty to defend, actual controversy existed and "[i]t is not necessary to know that the umbrella policy will be triggered[.]"); *cf. Contravest*, 921 F.Supp.2d at 1345 (no justiciable controversy where insured did not allege that any policy conditions triggered coverage by excess insurer, who had also not denied a claim); *Mt. Vernon Fire Ins. Co. v. Trevino*, No. 18-81677-CV, 2019 WL 13234074, *2-3 (S.D. Fla. June 3, 2019) (same, where umbrella insurer did not allege that it denied coverage or that its obligations under the policy would be triggered by exhaustion of the underlying policy).

Even where the insurer has made its coverage position clear by filing a declaratory judgment action asserting that it has no duty to defend, however, other

courts have found that excess insurance disputes are not ripe unless the allegations show a probability that the primary policies will be exhausted.  In *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., v. F. Vicino Drywall II, Inc.*, No. 10-cv-60273, 2010 WL 11552848 (S.D. Fla. Oct. 24, 2010), for example, the court examined whether an umbrella insurer's declaratory judgment action was ripe where the insured was subject to 17 lawsuits as part of the Chinese drywall litigation.  Although the insured had not yet requested coverage, the insurer sought a preemptive declaration that it had no duty to defend because the lawsuits fell outside its policy. *Id.* at *2.  Disregarding the insurer's reliance on the fact that similar drywall lawsuits had resulted in enormous judgments, the court found that it was *possible* the underlying lawsuits would exhaust the primary policies' coverage—but the fact that the complaint itself did not allege exhaustion or the likelihood of exhaustion was dispositive, and the claim was unripe. *Id.* at *6. Similarly, in *Ironshore Indem., Inc. v. Banyon 1030-32, LLC*, No. 10-60285-CIV, 2010 WL 11601098, *2 (S.D. Fla. May 28, 2010), the court emphasized that the complaint "contains no allegation that the underlying coverage has been exhausted or even that these claims are sufficient to create more than [the amount of underlying policy coverage] in exposure."  The same reasoning has held true where it is clear that other conditions precedent to insurance coverage have not occurred. *See*, *e.g.*, *Allied World Assurance Co. v. Lee Mem'l Health Sys.*, No. 2:18-cv-158, 2019 WL 1970609, *3 (M.D. Fla. May 1, 2019) (where insured stated it had not exhausted the self-insured retention that was a condition precedent to insurer's duty to defend, action against insurer was unripe); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Travelers Ins. Co.*, 214 F.3d

1269, 1272-73 (11th Cir. 2000) (where excess policy only activated after the complete cessation of coverage under underlying policies, and court found underlying insurer had a continuing obligation to defend insured, excess insurer's contractual duty to defend was not yet triggered).

On the other hand, complaints that plausibly allege that exhaustion of the primary coverage is likely have been found to establish an actual controversy. *See Admiral's Port*, 2023 WL 2760076 at *4 (where pleading contained sworn proof of loss in amount greater than primary coverage, actual controversy was established with respect to excess insurers); *see also Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, No. 2:15-cv-219, 2015 WL 5599175, *4 (M.D. Fla. Sept. 22, 2015) (although there had not yet been a request for coverage, allegations established that it was "highly likely" that a request for coverage would ensue).

   b. *CEI's Duty to Defend*

Here, the Court concludes that the allegations do not establish the existence of a justiciable controversy regarding CEI's duty to defend Publix in the opioid lawsuits. First, Publix has not adequately alleged facts that establish a likelihood that any obligations under CEI's excess policies will be activated as a result of the opioid lawsuits.  Publix expressly alleges that "no Insurer has paid any amount to Publix for the defense of the Opioid Lawsuits.[.]" Doc. 11 ¶ 92.   This allegation is in conflict with its challenge to CEI's claim that no primary policy has been exhausted in its response in opposition. *See* Doc. 150 at 13 n.5, citing Doc. 122 at 39.  In any event, the allegations in the complaint itself do not establish that any underlying policy has

been exhausted.  Nor do they allege or demonstrate a likelihood that *all* policies above

CEI's will be exhausted, such that CEI's duty to defend will be activated. *See Ironshore*,

2010 WL 11601098 at *2.  After all, the National Surety Corporation excess policies

appear at the very bottom of most years' policy lists, behind five other excess policies

and an umbrella policy; they are third on the list of excess policies for 2016 and 2017.

Doc. 11-1.  Publix does not provide information regarding the liability limits of the

policies that underlie CEI's, nor does it attach any of those policies except for the first

three from 2014—making it impossible to infer whether those limits are likely to be

reached by the opioid lawsuits.[5] *Cf. Admiral's Port*, 2023 WL 2760076 at *4.  Publix's

reliance on other opioid settlements and judgments is of little significance to the

Court's determination of its subject matter jurisdiction in this action. Doc. 150 at 16

n.7; *see Atlanta Gas*, 68 F.3d at 415; *F. Vicino Drywall*, 2010 WL 11552848 at *6.[6]  Nor

is any connection apparent between the list of pending lawsuits and the specific

policies or policy years they may implicate.  In all, the allegations in the complaint do

not establish a "practical likelihood" that the contingencies will occur and any dispute

will come to pass. *GTE*, 67 F.3d at 1569.

---

[5] The complaint may also need to establish that the policies' liability limits are inclusive of
defense costs, such that CEI's duty to defend—not just indemnify—would be triggered when
the underlying policies are exhausted. *See* Doc. 11-4 at 5-6 (Ace excess policy states "defense
in addition to limits" with respect to underlying policies).

[6] In addition, although this information does not appear on the face of the complaint and
cannot be considered in a facial challenge to subject matter jurisdiction, the Court also takes
note that all pending opioid lawsuits against Publix but one are currently stayed. Doc. 152 ¶
14.

Publix has also not established that CEI has denied its claims for coverage of the opioid lawsuits. The allegations in the complaint itself do not state that CEI has denied coverage. Publix merely alleges that "each Insurer either denied coverage, or, based upon its articulated coverage positions, is reasonably expected to deny coverage[.]" Doc. 11 ¶ 85. The latter alternative is insufficient to establish that there has been an actual denial of coverage, and Publix does not identify which of the two alternatives applies to CEI.

Publix argues, however, that CEI's 2020 and 2021 letters constitute denials. As a threshold matter, the Court agrees with Publix that they are incorporated by reference into the complaint. Extrinsic materials may be considered on a motion to dismiss without converting the motion into a motion for summary judgment if they are incorporated by reference in the complaint. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Hi-Tech Pharms, Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Incorporation by reference requires the document to be: 1) referenced in the complaint; 2) central to the plaintiff's claim, and 3) of undisputed authenticity. *Id.*

Here, all three requirements are satisfied. As will be discussed in Section III, *infra*, the complaint is not a model of specificity, and the Court agrees with CEI that nearly all its references to insurers and documents are vague. However, the complaint not only references but relies on each insurers' communication to Publix of its coverage position regarding the opioid litigation. Doc. 36 ¶¶ 85, 88. These purported denials, "articulated coverage positions," or "reserv[ations of] rights," *id.*, are the very foundation of Publix's claim that the insurers breached or anticipatorily breached their

contracts, and the basis for Publix's argument that declaratory judgments are needed. Although only one such letter is referred to in detail, *id.* ¶¶ 86-87, the Court concludes that the complaint intends to incorporate each one into its allegations, just as it intends to incorporate each policy and the pleadings from each lawsuit, and that it has omitted them only for the sake of brevity.   All these communications are both referenced in and central to the complaint. *Cf. Durden v. AIG Property Cas. Co.*, No. 5:20-cv-106, 2020 WL 6440496, *2 (N.D. Fla. Sept. 11, 2020) (reservation of rights letters that were "critical to AIG's defense…are hardly central to the *plaintiff's* claim.") (emphasis in original).   Nor does CEI raise a challenge to the letters' authenticity.   Accordingly, CEI's 2020 and 2021 letters are incorporated by reference and may properly be considered.

Nonetheless, neither letter constitutes a broad denial that any CEI policy will cover any opioid lawsuit, as Publix asserts.   The 2020 letter plainly states that it is not a denial of coverage. Doc. 150-2 at 3, 14.   It first observes that Publix has not sought any coverage under its policies with respect to opioid-related litigation, and that Publix is not asserting that CEI has a current duty to defend it. *Id.* at 2 n.1, 2-3.   The letter concurs that it has no current duty to defend Publix, which Publix does not dispute in this litigation. *Id.*; *see* Doc. 11 ¶¶ 102-110 (asserting only an anticipatory breach of contract against CEI).   Moreover, the letter painstakingly explains that it is a preliminary reservation of rights rather than a denial of coverage, detailing the difference between the two. Doc. 150-2 at 3. When discussing potential coverage with respect to the opioid lawsuits, the letter uses the phrase "reserves its rights to assert"

various coverage defenses that may or may not be relevant to an actual claim that is made in the future—for example, that a lawsuit defendant does not qualify as an "insured" or that a policy should be rescinded or deemed void because of a misrepresentation. *Id.* at 9-14. It is far from apparent that CEI is *likely* to assert that list of coverage defenses if Publix actually makes a claim; it is simply reserving its right to do so. The letter concludes that CEI "reserves all rights, remedies, and defenses under the [policies]…and to decline coverage under the [policies], in whole or in part." *Id.* at 15. In all, the Court finds that the 2020 letter cannot be viewed as an actual denial of coverage, nor an express repudiation of future coverage. *See Contravest*, 921 F.Supp.2d at 1344 ("A reservation of rights…is insufficient to create a substantial likelihood that the Insureds will suffer injury; it merely creates the possibility that such an injury could occur.").

The 2021 letter, on the other hand, does deny coverage for a particular claim. *See* Doc. 150-3 at 1 ("Allianz respectfully denies the tender of this Claim under the Excess policies at this time."), 5 ("If you believe this coverage determination to be inaccurate, or that this claim has been wrongfully denied or rejected…"). The letter responds to a claim that Publix made for an opioid lawsuit brought by Allegany County, New York. It states that this claim "does not presently trigger an obligation" under its policies issued in 1972, 1974, 1978, 1986-89, 1992, 1994-95, and 1997-99. The letter does not reference the CEI policies Publix lists in the attachment to its complaint or that were listed in the 2020 letter. It goes on to state that "Publix has not established that [exhaustion of the underlying insurance and other conditions] has

taken place for purposes of this Claim," which means that it "has no present duty to respond to the Claim under the Excess Policies." *Id.* at 4. Here, again, Publix does not contend that CEI has a *present duty* to defend it. A denial of coverage "at this time" (*id.* at 1) for lack of exhaustion of the underlying policies is distinct from a substantive coverage denial. Because Publix does not dispute that CEI has no current duty to defend it, a denial for this reason does not create an actual controversy between them.

The 2021 letter goes on to list two substantive reasons for denying coverage for the Allegany County lawsuit: 1) the plaintiff seeks to recover its economic losses, which are not covered by the policies, rather than damages for a covered injury, and 2) because the negligent actions are alleged to have begun in the late 1990s, the alleged injury did not occur during the policy period of most of the listed policies. *Id.* at 5. However, both of these reasons are specific to the Allegany lawsuit and the listed policies. *Cf.* Doc. 150 at 3 (claiming the 2021 letter stated "that *the Opioid Lawsuits* do 'not assert a claim for damages because of injury that is covered'") (emphasis added).[7] The Amended Complaint makes clear that the opioid lawsuits are not identical to each other: while all assert claims "generally concerning the effects of widespread opioid abuse," Doc. 11 ¶ 70, each suit may allege different theories of liability and damages. *Id.* ¶¶ 72-80. Whether a particular suit is covered under a particular policy requires an examination of the complaint and policy. *See, e.g., Stephens v. Mid-Continent Cas. Co.*,

---

[7] Publix also lists in its response in opposition several reasons that "[t]he Insurers, including Allianz…denied coverage," but only one of those reasons appears in the 2021 letter. Doc. 150 at 6.

749 F.3d 1318, 1323 (11th Cir. 2014).  CEI's conclusion that the Allegany County action alleges damages and injuries that are not covered by those 12 policies—because of the conduct and injury dates alleged and the damages theory—cannot be applied globally to all opioid lawsuits and all CEI policies.

Thus, contrary to Publix's interpretation, the 2021 letter's proposal that it "serve as a general reservation of rights letter covering the Opioid claims received to date, as well as any additional Opioid claims that may be received in the future," cannot reasonably be interpreted as a denial of *all* claims for opioid litigation. *Id.*  The Court concludes that the 2021 letter is another reservation of rights with respect to the opioid lawsuits more broadly, and a denial of coverage only with respect to the Allegany County lawsuit and the listed policies.  But Publix seeks determinations regarding CEI's obligations under any policy that CEI has ever issued Publix with respect to any opioid lawsuit that has been or will be filed against it. Doc. 11 ¶ 36 n.2; Doc. 11-1 at 2; Doc. 11-5 at 2; Doc. 150 at 7 n.4.  The 2021 letter does not establish that CEI has denied or repudiated coverage with respect to these broad questions. *Cf. Great Lakes*, 2018 WL 11482218 at *3; *H.E. Sutton*, 620 F.Supp.3d at 1170; *Littlejohn*, 2016 WL 5340543 at *4.

Accordingly, the Court concludes this action is most similar to *Contravest*, *Trevino*, and *Cummings*, in that the complaint does not allege or establish that CEI has denied coverage for the opioid lawsuits, or that there is a practical likelihood—more than a possibility—that it will do so in the future.  Nor does it adequately allege a practical likelihood that the need for CEI's excess coverage will arise.  As such, under

the current allegations, there is no justiciable controversy regarding CEI's duty to defend Publix in the opioid lawsuits.

Rather than staying Count III, the Court will dismiss the count without prejudice as to CEI and grant Publix leave to amend its allegations if facts sufficient to establish an actual case or controversy regarding CEI's duty to defend can be alleged. *See Contravest*, 921 F.Supp.2d at 1350; *Ironshore*, 2010 WL 11601098 at *3; *F. Vicino Drywall*, 2010 WL 11552848 at *7; *Allied World*, 2019 WL 1970609 at *4 (all dismissing without prejudice and with leave to amend); *see also Cummings*, 3223 F. App'x at 848 (upholding dismissal but stating it must be without prejudice).

### 3. Anticipatory Breach of Contract (Count II)

Count II alleges a cause of action for anticipatory breach of contract. This count must present a ripe "case or controversy" in order to confer jurisdiction under Article III. When evaluating ripeness, the court must consider: "1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). "Courts must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* (citation and quotation omitted).

Under Florida law, a party will be liable for anticipatory breach of contract when it repudiates a duty before committing a breach. *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-CIV, 2011 WL 13186654, *2 (S.D. Fla. Jan. 20, 2011)

(citations omitted).  To state a claim for anticipatory breach, "the factual allegations must show the breach occurred before the time [of performance] as the result of words or acts evincing an intention to refuse performance in the future." *Amnay v. Select Portfolio Servicing, Inc.*, No. 8:21-cv-2610, 2022 WL 3577358, *5 (M.D. Fla. Aug. 19, 2022) (citations and quotations omitted).  "A repudiation may be evidenced by words or voluntary acts[,] but the refusal must be distinct, unequivocal, and absolute…and without qualification[.]" *Id.* (citations and quotations omitted); *see also Mobley v. N.Y. Life Ins. Co.*, 295 U.S. 632, 638 (1935) ("repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.").

Publix argues that it has a ripe cause of action for anticipatory breach of contract, based on CEI's "definitive coverage position" and alleged denial of coverage. Doc. 150 at 18-19.  As discussed *supra*, however, the Court has concluded that the factual allegations in the Amended Complaint do not plausibly allege, and the 2020 and 2021 letters do not establish, that CEI denied coverage for the opioid lawsuits. CEI's carefully-worded reservations of rights were far from a "distinct, unequivocal, [] absolute," and unqualified refusal to provide coverage.  Although Publix is correct that a claim for anticipatory breach becomes ripe when the promisee elects to treat a

repudiation as such, *see* Doc. 150 at 18-19,[8] here there is no plausible allegation that CEI has repudiated its obligations through a general denial of coverage. *See Moynihan v. West Coast Life Ins. Co.*, 607 F.Supp.2d 1336, 1337 (S.D. Fla. 2009) (where defendant had not yet issued a coverage decision, prospective breach was speculative and unripe); *see also Digital Properties*, 121 F.3d at 590 (First Amendment claim was unripe where plaintiff filed suit without waiting to obtain "a conclusive response from someone with the knowledge and authority to speak for" defendant regarding the action for which it sought permission).

As noted, the 2021 letter did expressly deny coverage for the Allegany County lawsuit under 12 of its policies. Doc. 150-3.  The letter's two substantive coverage determinations—that the damages alleged were not covered, and that the injury did not occur during a policy period—are plain statements that CEI would not cover the lawsuit under those 12 policies even if the underlying policies were exhausted.  The letter could qualify, then, as an absolute repudiation of a duty that has not yet arisen.  However, the problem for Publix is that Count II is written broadly: it alleges that the insurers "have unequivocally indicated, either expressly or through their conduct, that

---

[8] In this regard, the Court disagrees with the out-of-circuit cases cited in CEI's motion to dismiss that found that an anticipatory breach claim was premature until contractual obligations were implicated. Doc. 128 at 14 n.3.  In Florida, at least, an anticipatory breach is one that arises before the time of performance, while an actual breach occurs once the contractual obligations are implicated.  For this reason, contrary to CEI's arguments, the lack of exhaustion of the underlying policies is not why this cause of action is unripe.  Exhaustion only affects whether CEI's duty to perform has arisen, but the cause of action for anticipatory breach of contract assumes that it has not.  Instead, Publix's claim against CEI for anticipatory breach is unripe because a repudiation of the duty has not yet occurred.

they will not make payments towards *any* defense costs or settlements or judgments under their Policies *for the Opioid Lawsuits*." Doc. 11 ¶ 107 (emphasis added).  This count is simply too far-reaching to be limited to the narrow anticipatory breach that is plausibly supported by the 2021 letter.  As written, the allegations do not establish the existence of a mature controversy as to an anticipatory breach by CEI.  Accordingly, the Court will dismiss Count II without prejudice as to CEI, with leave to amend.

### 4. Conclusion

The Court concludes that it lacks subject matter jurisdiction over all three causes of action alleged against CEI.  In so concluding, the Court does not disregard the "significant gains in efficiency" to be generated by a global declaratory judgment action that addresses all insurers, policies, and lawsuits. *See James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1062 (11th Cir. 2022).  It acknowledges Publix's—and the Court's—interest in avoiding piecemeal litigation and furthering judicial economy, particularly in the context of complex, multidistrict litigation. Doc. 150 at 16.  Nonetheless, a lack of subject matter jurisdiction cannot be waived, and the Court must "zealously [e]nsure that jurisdiction exists[,]" as it is "powerless to act beyond its statutory grant of subject matter jurisdiction." *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

### III.   SHOTGUN PLEADING

CEI's final argument is that the Amended Complaint constitutes a shotgun pleading.  As the Court explained in its Order dated November 17, 2022 (Doc. 10),

26

complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The Eleventh Circuit has identified four general types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint ... replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Burke v. Custom Marine Grp.*, 847 F. App'x 578, 580–81 (11th Cir. 2021), citing *Weiland*, 792 F.3d at 1321-23.

Rather than answering, a defendant who is faced with a shotgun pleading is expected to move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *Anderson*, 77 F.3d at 366.  Rule 12(e) permits a party to "move for a

more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  However, "the purpose of a more definite statement is to rectify unintelligibility in a complaint, not to provide more details that can reasonably be left to discovery." *Altor Locks, LLC v. Proven Industries, Inc.*, No. 8:22-cv-597, 2022 WL 17987073, *5 (M.D. Fla. Oct. 18, 2022) (Scriven, J.) (citations and quotations omitted).

CEI argues that the Amended Complaint is a shotgun pleading because it does not provide specific allegations for each Defendant, instead grouping them together with vague claims and failing to differentiate between the insurance policies they issued or the types of relief it seeks from each one. Doc. 128 at 20-22.  CEI contends that the complaint should be dismissed, or Publix should be ordered to provide a more definite statement that would allow CEI to meaningfully respond to the allegations against it. *Id.* at 22-23.[9]

As discussed in Section II(2)(b), *supra*, the Amended Complaint is intentionally non-specific in many areas.  With respect to the lawsuits Publix faces, its various insurance policies, and Defendants' coverage positions, Publix has chosen to summarize and provide a single exemplar in each category rather than including all

---

[9] Publix argues in its response that the Court already addressed any shotgun pleading issues in its prior Order. Doc. 150 at 19-20, citing Doc. 10.  The Court disagrees.  While it directed Publix to correct the first, and most common, type of shotgun pleading in the initial complaint, it made no determination that the Amended Complaint did not constitute a different type of shotgun pleading.

details with respect to each one.  Clearly, it took this approach for the sake of brevity: the alternative, which CEI contends is necessary, would result in a complaint that spanned hundreds of pages, with perhaps thousands of pages of attachments.  Under the unique circumstances of this action, Publix's approach provides adequate notice to Defendants of the claims against them while balancing the interests of judicial economy.  The complaint places each Defendant on notice of a coverage dispute with respect to the insurance policies they issued Publix during a certain time period and the opioid lawsuits, whose case numbers Publix has provided along with a general summary of the claims.    It further alerts them that Publix interprets their communications with Publix about coverage of the lawsuits to constitute a denial of coverage, which Publix alleges is wrongful.  While greater detail would normally be preferable, it is not "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" or "to understand who did what." *Anderson*, 77 F.3d at 366; *Micro v. Shabanets*, No. 15-80999-CIV, 2015 WL 11438937, *4 (S.D. Fla. Dec. 4, 2015).  Nor can the complaint be described as "unintelligible" such that a more definite statement is necessary to form a substantive response. *Altar Locks*, 2022 WL 17987073 at *5.

In concluding that the complaint is not a shotgun pleading, the Court differentiates between complaints that are shotgun pleadings and those that fail to state a claim.  Although a motion to dismiss a shotgun pleading may be brought under Rule 12(e) or Rule 12(b)(6), *see Barmapov v. Amuial*, 986 F.3d 1321, 1330 (11th Cir. 2021) (Tjoflat, J., concurring), a complaint that fails to state a claim is not necessarily a

shotgun pleading.  In other words, a complaint can provide adequate notice of the claims against the defendants while still failing to plausibly allege facts that state a claim to relief. *See, e.g., ACG South Ins. Agency, LLC v. Safeco Ins. Co.*, No. 8:19-cv-528, 2019 WL 8273657 (M.D. Fla. Dec. 16, 2019) (Honeywell, J.) (dismissing all counts for failure to state a claim but concluding complaint was not a shotgun pleading). Count II provides an example.  The Court has concluded that the complaint fails to plausibly allege that CEI repudiated a contract.  As a result, it found that Count II is unripe as to CEI, but it could also have found that the count fails to state a claim against CEI for the same reason.  The same may be true for some of the other Defendants as well, but they chose to file answers instead of motions to dismiss. Irrespective of the potential failure to state a claim, the allegations sufficiently placed them on notice of the claim Publix was attempting to assert.  The complaint is not a shotgun pleading.

Therefore, CEI's motion to dismiss the Amended Complaint as a shotgun pleading, or for a more definite statement, is denied.

Accordingly, it is **ORDERED**:

1. The Motion to Dismiss, or, in the alternative, Motion for a More Definite Statement (Doc. 128), filed by Defendants Fireman's Fund Insurance Company and National Surety Corporation is GRANTED-IN-PART and DENIED-IN-PART.

    a. The motion is granted to the extent that Counts II and III are **dismissed without prejudice** as to Defendants Fireman's Fund

Insurance Company and National Surety Corporation.  Publix may file a Second Amended Complaint within **fourteen (14) days** of the date of this Order, if facts sufficient to establish an actual case or controversy with respect to these counts can be alleged therein.

b. Count IV is **stayed** as to all Defendants.

c. The motion is otherwise denied.

**DONE** and **ORDERED** in Tampa, Florida on September 15, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties