# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| PUBLIX SUPER MARKETS, INC.<br><br>    Plaintiff,<br><br>v.<br><br>ACE PROPERTY AND CASUALTY INSURANCE COMPANY, *et al.*<br><br>    Defendants. | Case No. 8:22-CV-02569<br><br>Judge Charlene E. Honeywell<br><br>**INSURERS' RESPONSE TO PUBLIX SUPER MARKETS, INC.'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE 2013 INSURERS' DEFENSE OBLIGATION** |

## Table of Contents

**PRELIMINARY STATEMENT** ........................................................................................ 1

**ARGUMENT** ................................................................................................................... 4

   I.  A RIPE CONTROVERSY REQUIRES THAT THE RETAINED LIMITS
      WILL BE EXHAUSTED .......................................................................................... 4

   II.  PUBLIX HAS NOT SHOWN ITS REQUEST FOR DECLARATORY RELIEF
       IS RIPE ................................................................................................................... 6

      A.  There Is No Ripe Dispute as to the 2013 Druggists Policy Alone ..................... 6

      B.  Publix Has Not and May Never Trigger the Policies Excess of the Druggists
          Policy. ................................................................................................................. 9

**CONCLUSION** ............................................................................................................... 10

i

# Table of Authorities

**Cases**

*Admiral's Port Condo. Ass'n., Inc. v. Endurance Am. Specialty Ins. Co.*,
   No. 22-23408, 2023 WL 2760076 (S.D. Fla. Mar. 16, 2023) .......................................... 6

*Allied World Assurance Co. v. Lee Mem'l Health Sys.*,
   No. 18-cv-158, 2019 WL 1970609 (M.D. Fla. May 1, 2019) ..................................... 4, 5

*Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*,
   68 F.3d 409 (11th Cir. 1995) ........................................................................................ 1

*Berkshire Hathaway Specialty Ins. Co. v. City of Phoenix*,
   No. CV-16-01083, 2016 WL 6648174 (D. Ariz. Nov. 10, 2016) ............................... 4, 9

*CSX Transp., Inc., v. Admiral Ins. Co.*,
   No. 93-132, 1996 WL 33569825 (M.D. Fla. Nov. 6, 1996) .......................................... 5

*Essex Ins. Co. v. Littlejohn*,
   No. 15-cv-897, 2016 WL 5340543 (N.D. Ga. Feb. 12, 2016) ....................................... 6

*Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*,
   No. 15-cv-219, 2015 WL 5599175 (M.D. Fla. Sept. 22, 2015) .................................... 6

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
   864 F.3d 130 (2d Cir. 2017) ...................................................................................... 5, 6

*S.-Owners Ins. Co. v. P & T Lawn & Tractor Serv., Inc.*,
   No. 22-cv-439, 2023 WL 2391711 (M.D. Fla. Mar. 7, 2023) ....................................... 6

*Snohomish County. v. Allied World National Assurance Co.*
   No. C16-63, 2017 WL 3621227 (W.D. Wash. Aug. 21, 2017) ..................................... 5

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
   73 F.3d 1178 (2d Cir. 1995) .......................................................................................... 5

*Travelers Prop. Cas. Co. of Am. v. H.E. Sutton Forwarding Co., LLC*,
   620 F. Supp. 3d 1165 (M.D. Fla. 2022) ........................................................................ 6

*Walmart Inc v. ACE American Ins. Co., et al.*,
   No. 04CV-22-2835-4 (Benton Cnty., Ark. Cir. Ct. Dec. 29, 2023) ............................... 3

*Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*,
   248 F. Supp. 3d 1268 (M.D. Fla. 2017) ........................................................................ 1

**Rule**

Fed. R. Civ. P. 56(d) .......................................................................................................... 9

Defendant Insurers[1] hereby respond to Plaintiff Publix Super Markets, Inc. ("Publix")'s supplemental brief pursuant to this Court's Order of December 7, 2023 (ECF No. 219).

## PRELIMINARY STATEMENT

Publix moved for partial summary judgment, seeking a declaration that it is entitled to defense costs under the 2013 Policies.[2] As Publix recognizes, its motion requires it to establish that a ripe controversy exists that would warrant a declaration by this Court. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) ("In all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists.") (citation omitted); *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (same). Publix's supplemental submission confirms it cannot do so.

In order for Publix to show a ripe controversy for declaratory judgment, it must show that the 2013 Policies have been triggered by proper exhaustion of Publix's self-insured retention and other amounts. Opp. at 12–15. In its original summary judgment motion, Publix did not even attempt such a showing. And now, after prompting from the Court, Publix offers only a sparse declaration ("Wilson Decl.") stating that it has paid approximately $6.7 million in defending against the Opioid

---

[1] This term refers to the same insurers as in Certain 2013 Insurers' Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp.," ECF No. 198), in addition to Hartford Fire Insurance Company ("Hartford Fire").

[2] Unless otherwise noted, all capitalized terms have the meaning ascribed to them in Certain 2013 Insurers' Opposition.

1

Lawsuits (i.e., its alleged defense costs), and making assertions about the settlement amounts (i.e., indemnity costs) paid by *other defendants*. That is not sufficient.

Publix previously acknowledged that Hartford Fire's Druggists Policy was a fronting policy, such that "real, risk-transfer insurance coverage" did not begin until the layers above it. Compl. at 17–18, ECF No. 1; Am. Compl. at 17–18, ECF No. 11; Mot. for Partial Summ. J. at 6, ECF No. 176. Now, however, Publix makes the fronting Hartford Fire Druggists Policy the jurisdictional foundation of its summary judgment motion, arguing "[Publix has] paid more than enough defense costs to exhaust the SIR and the limits of the primary Druggists[] Policy in effect in 2013," while speculating that "any Insurers' Policies not implicated yet may well be implicated in the near future." Supp. Br. at 1, 3, ECF No. 222.

There is an obvious reason for Publix's newfound focus on the fronting Druggists Policy. As Insurers explained, to trigger any of the policies that sit excess of Hartford Fire's fronting policy, Publix must show that it has paid "*judgments or settlements*"—not defense costs—sufficient to exhaust underlying coverage. Opp. at 8–9. This is a showing Publix cannot make, as its vague reference to settlements "other defendants" have paid highlights.

But even as to the Druggists Policy by itself, Publix does not have a ripe claim. Because the Druggists Policy is fronting, Publix has no cognizable interest for Article III purposes in obtaining coverage from that policy, as distinguished from the "real, risk-transfer" policies sitting above it. As Publix previously and accurately represented to the Court, any dollar owed under the Druggists Policy is a dollar paid by Publix.

2

*See* Mot. for Partial Summ. J. at 6. Thus, adjudication of coverage under the Druggists Policy alone will have no tangible impact on Hartford Fire's obligations.

Even if it did, Publix has failed to carry its burden to show that the Druggists Policy is triggered. In order to reach the $100,000 fronting layer of coverage in that policy, Publix must exhaust the policy's $1.9 million SIR for "[e]ach [o]ccurrence." Opp. at 9–10. The Druggists Policy defines "occurrence" as, among other things, all "acts or omissions" in the "furnishing of" a "druggists product" "*to any one person*." *Id.*; *see also* Stipulation of Agreed Material Facts ("SOMF") ¶¶ 24, 31, 51–52, 58, ECF No. 197. In light of this language, Publix must identify how many occurrences it contends have taken place, what those occurrences are, and when they occurred, such that all $6.7 million of its alleged defense costs should be allocated to the 2013 Policy tower. The declaration Publix submits does not address any of these issues. Nor has Publix produced any documents in response to Insurers' discovery requests targeted at these issues. Publix has utterly failed to carry its burden.

The Court should deny Publix's motion as unripe. Indeed, Publix's threadbare evidentiary showing raises the question, which the Court may direct the parties to address, whether this entire action should be dismissed for the same reasons.[3]

---

[3] The recent decision in *Walmart Inc v. ACE American Ins. Co., et al.*, 04CV-22-2835-4 (Benton Cnty., Ark. Cir. Ct. Dec. 29, 2023), which Publix brought to the Court's attention after primary briefing (ECF No. 224), does not help Publix here because there were no ripeness issues in that case. Moreover, that decision defined damages "because of" bodily injury as any damages "arising out" of such injury, which is contrary to Florida law. *Compare Walmart Inc.*, 04CV-22-2835-4 at ¶¶ 28–29, *with* Opp. at 18–19, 21–23 (citing Florida law that "because of" means "a direct causal connection").

3

**ARGUMENT**

**I.   A RIPE CONTROVERSY REQUIRES THAT THE RETAINED LIMITS WILL BE EXHAUSTED**

A party seeking a declaratory judgment must show that there is a ripe controversy. In the context of a coverage action involving insurers sitting above an SIR—which Publix does not dispute is the case here—no such controversy exists without a showing that the applicable retentions or underlying limits are likely to be exhausted. *See Allied World Assurance Co. v. Lee Mem'l Health Sys.*, No. 18-cv-158, 2019 WL 1970609, at *2–3 (M.D. Fla. May 1, 2019); *see also Berkshire Hathaway Specialty Ins. Co. v. City of Phoenix*, No. CV-16-01083, 2016 WL 6648174, at *3 (D. Ariz. Nov. 10, 2016) (finding excess insurer's declaratory judgment claim was unripe as there was "no practical likelihood of the occurrence of a coverage-triggering contingency").

Publix summarily waves away these cases, asserting that they concern the question whether a court can order an excess insurer to provide coverage, as opposed to whether an action concerning the existence of an insurer's obligation is ripe without a showing that underlying retentions (and insurance, if any) have been exhausted. Not so. In both *Allied World* and *Berkshire Hathaway*, courts squarely dismissed coverage actions as unripe because the insured had not exhausted its SIR. *See Allied World*, 2019 WL 1970609, at *3; *Berkshire Hathaway*, 2016 WL 6648174, at *3. Publix distinguishes both cases because here, according to Publix, it "has exhausted its SIR." Supp. Br. at 9 n.4. But that question—whether Publix has in fact exhausted the retention—is of course the key matter in dispute, and Publix has failed to make the requisite showing

4

given the per-occurrence SIR in the fronting Druggists Policy and the plain language of the policies that sit excess of it. *See infra* II. Publix also declares *Allied World* to be "factually inapposite" because "Publix's Amended Complaint asserts causes of action based on the Insurers' defense obligation." Supp. Br. at 9 n.4. But, while *Allied World* added that the insured had only sought reimbursement rather than that the insurer take over its defense, the court independently held that the duty to defend was unripe. The former nuance was irrelevant to the ripeness ruling. *See* 2019 WL 1970609, at *3.[4]

Publix's remaining response on the law is to imply that this Court can decide whether Insurers *would eventually* owe a duty to defend "even when underlying coverage is not yet exhausted if there is a true dispute and a likelihood the insurer's coverage will be impacted." Supp. Br. at 9. Again, whether there is such a likelihood is one of the critical questions here, *see infra* II.A and II.B; Publix cannot simply assume it away. None of Publix's cases says otherwise. *CSX Transp., Inc., v. Admiral Ins. Co.*, No. 93-132, 1996 WL 33569825 (M.D. Fla. Nov. 6, 1996), and *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178 (2d Cir. 1995), did not examine exhaustion of underlying retentions or limits. And *Olin Corp. v. OneBeacon Am. Ins. Co.*, which does not address ripeness or the declaratory judgment standard, actually undermines Publix's position. It states that an insured may "tap a particular tower of its insurance

---

[4] Publix simply ignores *Snohomish County. v. Allied World National Assurance Co.* See Opp. at 15 (citing *Snohomish County*). In that case, the court dismissed as "premature" an insured's action seeking a declaration that an excess insurer owed it a duty to defend. It held that, "[i]n conceding that it ha[d] not provided [insurer] with proof of exhaustion, [insured] ha[d] failed to establish a critical element of its claim . . . and the Court [was] not in a position to enter a declaratory judgment in its favor." No. C16-63, 2017 WL 3621227, at *3 (W.D. Wash. Aug. 21, 2017); *see also* Opp. at 15.

5

program triggered by an occurrence and proceed up the tower *upon depletion of the policies within each layer of coverage*." 864 F.3d 130, 145 (2d Cir. 2017) (emphasis added).

Publix also generally refers to the cases cited by this Court in its Order of September 15, 2023 (the "MTD Order," ECF No. 214). Supp. Br. at 9. Those cases do not help its position. For one thing, pleading stage decisions do not relieve Publix of its burden at summary judgment. *Compare, e.g.*, *Admiral's Port Condo. Ass'n., Inc. v. Endurance Am. Specialty Ins. Co.*, No. 22-23408, 2023 WL 2760076, at *4 (S.D. Fla. Mar. 16, 2023) (invoking pleading-stage standard). And four of the cases cited in the MTD Order did not examine the question of exhaustion at all.[5]

In short, Publix cannot avoid or short-circuit the critical legal inquiry, which is whether a ripe dispute with Insurers exists.[6]

## II. PUBLIX HAS NOT SHOWN ITS REQUEST FOR DECLARATORY RELIEF IS RIPE

### A. There Is No Ripe Dispute as to the 2013 Druggists Policy Alone.

Publix acknowledged in its Motion that, because the Druggists Policy is fronting, "its limit is available after Publix has exhausted the [$1.9 million] self-insured

---

[5] *Travelers Prop. Cas. Co. of Am. v. H.E. Sutton Forwarding Co., LLC*, 620 F. Supp. 3d 1165, 1170 (M.D. Fla. 2022); *Essex Ins. Co. v. Littlejohn*, No. 15-cv-897, 2016 WL 5340543, at *4 (N.D. Ga. Feb. 12, 2016); *S.-Owners Ins. Co. v. P & T Lawn & Tractor Serv., Inc.*, No. 22-cv-439, 2023 WL 2391711, at *4 (M.D. Fla. Mar. 7, 2023); *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, No. 15-cv-219, 2015 WL 5599175, at *4 (M.D. Fla. Sept. 22, 2015).

[6] Publix tries to distinguish the circumstances presented by CEI (as that term is defined in the Motion to Dismiss Order) by arguing that Insurers "*definitively*" expressed that they would not provide coverage. Supp. Br. at 5–6. Even were that true—and of course positions taken in litigation cannot ground subject-matter jurisdiction, which is judged at the time the complaint was filed—Publix's hand-waving misses the point, which is that Publix has failed to show that the 2013 tower has been or is likely to be triggered.

6

retention, but it has a deductible equal to the policy limit and provides that Publix must reimburse amounts received under the Policy up to the amount of the deductible." Mot. for Partial Summ. J. at 6.  Thus, "real, risk-transfer insurance coverage" occurs only *after* the exhaustion of the Hartford Fire policy thresholds. Am. Compl. ¶ 39. Aware that it cannot show the policies above the Druggists Policy are triggered (*see infra* II.B), Publix now makes the fronting policy the linchpin of its justiciability argument. Supp. Br. at 1.

Publix's change of posture goes against both this Court's precedent and common sense.  A few months ago, the Court ruled that a "justiciable controversy turns on the likelihood that a true dispute exists regarding coverage, as well as the likelihood that the resolution of the dispute will have a ***tangible impact on the insurer's obligations***." MTD Order at 12 (emphasis added).  But Publix itself recognizes that any dollar owed under the fronting policy is a dollar paid by Publix.  A so-called dispute over the application of the Druggists Policy is therefore tantamount to a dispute between Publix and itself, which is no dispute at all—any "resolution" would have no "tangible impact" on Hartford Fire's obligations.

Even putting aside the fronting nature of the Druggists Policy, Publix has not shown that it has satisfied its SIR to trigger it.  The language of the 2013 Policies is clear that the underlying amounts must be exhausted for *each* triggering event. Opp. at 9–10.  The Druggists Policy, even if there were a covered occurrence, which the Insurers dispute, states that the underlying SIR applies for "Each Occurrence"; there is no aggregate limit to the SIRs.  *See* SOMF ¶ 24.  And the definition of "occurrence"

7

provides that "[a]ll 'claims' for damages or 'claim expenses' arising out of one prepared lot of 'your druggists product'" or all acts or omissions "in the furnishing of" the product "*to any one person* [s]hall be considered as arising out of one 'occurrence.'" *Id.* ¶ 32 (emphasis added); Druggists Policy, § (V)(15) (Definitions), ECF No. 177-1. The Liberty Policy follows form as to the definition of "occurrence." SOMF ¶ 36. The ACE Excess Policy, to which the policies issued by the excess insurers follow form, contains similar language. *Id.* ¶ 58.

Publix does not contest that it must satisfy the SIR for each covered occurrence to trigger the Druggists Policy, does not deny that there is no aggregate SIR under that Policy, and does not attempt to show proper exhaustion of the SIR in accordance with the Policies' definition of occurrence. Instead, Publix offers a declaration generally stating that it has "incurred and paid at least $6,670,550.21 in defense costs related to the Opioid Lawsuits since April 2021." Wilson Decl. ¶ 3. That bare statement is woefully insufficient.

The SIR is $1.9 million. Publix claims to have spent approximately $6.7 million in defense costs total. Yet it does not even attempt to identify to which occurrences, or people, those defense dollars are allocated for purposes of exhausting the SIR. The Wilson Declaration is similarly silent about what portion, if any, of the $6.7 million pertains to the 2013 coverage year, nor does Publix explain why, for instance, the defense costs should not be allocated across the coverage block. Thus, Publix has not

explained how many occurrences it attributes to 2013, or how its claimed expenses relate to any such purported occurrences.[7]

Publix has had ample opportunity to provide such information about the number and date of any claimed occurrences and the timing of any resulting damages.[8] It has not done so or claimed it has done so. Instead, Publix has chosen to rely on speculative and conclusory assertions that the dispute here "is indisputably ripe." Supp. Br. at 2. As a result, there can be "no practical likelihood of the occurrence of a coverage-triggering contingency," *Berkshire Hathaway*, 2016 WL 6648174, at *3, and no justiciable controversy.[9]

### B. Publix Has Not and May Never Trigger the Policies Excess of the Druggists Policy.

Nor can Publix show that its motion is ripe specifically against any of the carriers sitting excess of the Druggists Policy. As noted, the Druggists Policy, with its SIR, sits at the bottom of the 2013 insurance tower. The Liberty Policy is next up, with the ACE Policy above that and certain other excess policies stacked on top. Each

---

[7] Of course, Insurers contend that Publix has not shown any "occurrence" at all. *See* Opp. at 16–40.

[8] For example, Insurers requested information and materials concerning "each Person who allegedly suffered a 'bodily injury,'" "each accident, 'Occurrence' or 'pharmacist liability incident' . . . that [Publix] contends took place over the Relevant Period," and documents regarding "payments made by Publix that Publix contends" exhaust applicable retained limits. Heidlage Decl. In Supp. of Opp. ("Heidlage Decl.") ¶¶ 17–19, ECF No. 199; Certain Insurers' Corrected First Set of Doc. Reqs., at Req. Nos. 23, 61, ECF No. 199-1; ACE Property and Casualty Insurance Company's First Set of Interrogs., at Interrog. No. 3, ECF No. 199-2. Publix objected and referred Insurers to the documents to be produced in the Action. No party has yet identified responsive material in those productions.

[9] At a minimum, Insurers are entitled to take discovery on ripeness. *See* Fed. R. Civ. P. 56(d); Heidlage Decl. While Publix produced—the evening before this brief was due—some invoices, invoices do not address all the issues highlighted above, and in any event, Insurers are entitled to fully investigate the basis for the statements in the Wilson Declaration, including by deposition.

9

policy requires that the layer below be exhausted before it is triggered. Yet the Liberty Policy cannot be triggered until Publix has paid "judgments or settlements"—not defense costs—exhausting the amounts underlying it. Specifically, the duty to defend is not triggered until "[t]he total applicable limits of 'underlying insurance' have been exhausted by payment of **judgments or settlements.**" *See* SOMF ¶ 40 (emphasis added). The Liberty Policy defines "Underlying insurance" to include both "policies of insurance [*i.e.*, the Druggists Policy and its $100,000 limit] or self-insurance [*i.e.*, the $1.9 million SIR] listed in the Declarations under the Schedule of 'underlying insurance.'" *Id.* ¶ 41. The same goes for the ACE Excess Policy and all the policies that follow form to it, such that ACE has no duty to defend until the Liberty Policy is exhausted. *See* Opp. at 9; SOMF ¶¶ 51, 53, 55. And Publix's defense costs cannot trigger Liberty's duty to defend because they are not "judgments or settlements."

Insurers outlined these points in their Opposition. *See* Opp. at 8–9, 14. Publix ignores them. *See* ECF Nos. 209, 222. The Wilson Declaration does not contend that Publix itself has paid, is about to pay, or may ever pay any such settlements or judgments. Thus, Publix has not identified any presently-existing or non-speculative circumstances that would trigger the Liberty Policy and the policies above it.

## CONCLUSION

Insurers request that the Court deny Publix's motion for partial summary judgment as unripe and dismiss the claims against the 2013 Insurers.

Dated: January 18, 2024

Respectfully submitted,

| | |
|---|---|
| CLYDE & CO US LLP<br>Alfred C. Warrington (FL Bar No. 572111)<br>Douglas E. Horelick (FL Bar No. 145335)<br>1221 Brickell Avenue, Suite 1600<br>Miami, FL 33131<br>(305) 446-2646<br>alfred.warrington@clydeco.us<br>douglas.horelick@clydeco.us<br><br>Robert Mangino (NJ Bar No. 042821984)<br>(*pro hac vice*)<br>340 Mt. Kemble Avenue, Suite 300<br>Morristown, NJ 07960<br>(973) 210-6700<br>robert.mangino@clydeco.us<br><br>Susan Koehler Sullivan (CA Bar No. 156418) (*pro hac vice*)<br>355 S. Grand Ave, Ste. 1400<br>Los Angeles, CA 90071<br>(213) 358-7600<br>susan.sullivan@clydeco.us | HOLWELL SHUSTER & GOLDBERG LLP<br>*/s/ Michael S. Shuster*<br>Michael S. Shuster (NY Bar No. 2122190) (*pro hac vice*)<br>Daniel M. Sullivan (NY Bar No. 4710323) (*pro hac vice*)<br>Blair E. Kaminsky (NY Bar No. 4747523) (*pro hac vice*)<br>Benjamin F. Heidlage (NY Bar No. 4822151) (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>(646) 837-5151<br>mshuster@hsgllp.com<br>dsullivan@hsgllp.com<br>bkaminsky@hsgllp.com<br>bheidlage@hsgllp.com<br><br>*Attorneys for Defendant ACE Property & Casualty Insurance Co.* |

| | |
|---|---|
| BUTLER WEIHMULLER KATZ CRAIG, LLP<br>*/s/ Matthew J. Lavisky*<br>Matthew J. Lavisky (FL Bar No. 48109)<br>Latasha Scott (FL Bar No. 52316)<br>400 N. Ashley Drive, Suite 2300<br>Tampa, FL 33602<br>(813) 281-1900<br>mlavisky@butler.legal<br>lscott@butler.legal<br><br>Robert A. Kole (*pro hac vice*)<br>John C. Calhoun (*pro hac vice*)<br>Choate Hall & Stewart LLP<br>2 International Place<br>Boston, MA 02110<br>(617) 248-5000<br>rkole@choate.com<br>jcalhoun@choate.com<br><br>*Attorneys for Liberty Insurance Underwriters, Inc., Liberty Mutual Fire Insurance Company, and The Ohio Casualty Insurance Company* | RUGGERI PARKS WEINBERG LLP<br>*/s/ James P. Ruggeri*<br>James P. Ruggeri (*pro hac vice*)<br>Annette P. Rolain (*pro hac vice*)<br>1875 K Street, Suite 600<br>Washington, DC 20006-125<br>Telephone (202) 984-1400<br>Facsimile (202) 984-1401<br>Email: jruggeri@ruggerilaw.com<br>Email : arolain@ruggerilaw.com<br><br>Jorge A. Maza<br>Fla. Bar No. 94882<br>HINSHAW & CULBERTSON LLP<br>2525 Ponce De Leon Blvd, Floor 4<br>Coral Gables, FL 33134<br>Telephone (305) 428-5051<br>Email: jmaza@hinshawlaw.com<br><br>*Attorneys for Hartford Fire Insurance Company* |

| | |
|---|---|
| DENTONS US LLP<br>/s/ *Keith Moskowitz*<br>Keith Moskowitz (*pro hac vice*)<br>233 South Wacker Drive, Suite 5900<br>Chicago, IL 60606<br>(312) 876-8000<br>keith.moskowitz@dentons.com<br><br>Kathryn Guinn (*pro hac vice*)<br>1400 Wewatta Street, Suite 700<br>Denver, CO 80202<br>(303) 634-4000<br>katy.guinn@dentons.com<br><br>Angel A. Cortiñas, FBN 797529<br>Jonathan Kaskel, FBN 52718<br>1 Alhambra Plaza, Penthouse Coral Gables, Florida 33134<br>(305) 537-0015<br>angel.cortinas@dentons.com<br>jonathan.kaskel@dentons.com<br><br>*Attorneys for Defendant XL Insurance America, Inc.* | HINSHAW & CULBERTSON LLC<br>/s/ *Adam H. Fleischer*<br>Ronald L Kammer (FL Bar No. 360589)<br>2525 Ponce de Leon Blvd, Floor 4<br>Coral Gables, FL 33134<br>(305) 428-5100<br>rkammer@hinshawlaw.com<br><br>BATES CAREY LLP<br>Adam H. Fleischer (*pro hac vice*)<br>Joshua A. Boggioni (*pro hac vice*)<br>Kevin F. Harris (*pro hac vice*)<br>Bates Carey LLP<br>191 N. Wacker, Suite 2400<br>Chicago, IL 60606<br>(312) 762-3100<br>afleischer@batescarey.com<br>jboggioni@batescarey.com<br>kharris@batescarey.com<br><br>*Attorneys for Defendant Great American Insurance Company of New York* |