UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PUBLIX SUPER MARKETS, INC.,

     Plaintiff,

v.                                Case No: 8:22-cv-2569-CEH-AEP

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, *et al.*,

     Defendants.

_____

**ORDER**

This matter comes before the Court on Plaintiff Publix Super Markets, Inc.'s ("Publix") Motion for Partial Summary Judgment (Doc. 176).  In this insurance action, Publix seeks a declaration that its insurers have a duty to defend and indemnify it in pending lawsuits related to the opioid epidemic ("the underlying lawsuits").  The motion for partial summary judgment focuses on the insurance policies that were effective in 2013, and seeks a ruling on disputed coverage issues as to those policies. The 2013 insurer defendants ("defendants") have responded in opposition (Docs. 198, 202),[1] and Publix has replied (Doc. 209).  At the Court's request, the parties also submitted supplemental briefing on the threshold issue of ripeness (Docs. 222, 225, 238, 241).

---

[1] Another defendant who is not a 2013 insurer, St. Paul Fire & Marine Insurance Company, also filed a response in opposition, explaining that Publix "seeks a ruling applicable to the insurance policies covering other policy years." Doc. 201.

Upon review and full consideration, and being duly advised in the premises, the Court finds that the motion for partial summary judgment is ripe as to at least some of the 2013 insurer defendants. On the merits, the Court concludes that the underlying lawsuits do not allege damages "because of bodily injury," as that term is defined under Florida law. Accordingly, the motion for partial summary judgment is due to be denied, and Publix must show cause as to why partial summary judgment should not be granted in favor of the 2013 insurer defendants.

## I.   BACKGROUND[2]

Publix, a supermarket chain that operates retail pharmacies, is named as a defendant in more than 60 lawsuits related to the opioid crisis. Doc. 197 ¶¶ 1, 8. It has incurred more than six million dollars in defense costs, but has not yet been the subject of any settlements or judgments. *Id.* ¶ 10; Doc. 223 ¶¶ 2-3. Some other retail pharmacy defendants in opioid lawsuits have entered into settlement agreements ranging from $1.2 billion to more than five billion dollars. *Id.* ¶ 4.

Publix tendered claims for the underlying lawsuits to its insurers in April 2021. Doc. 197 ¶ 64. None of them agreed to defend or indemnify Publix. Doc. 177 ¶¶ 9-10. Publix therefore filed the instant declaratory judgment action in November 2022. Doc. 1. In their Answers to the Amended Complaint, defendants indicate they will deny coverage. Docs. 121, 122, 123, 127, 130.

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, and the Stipulation of Agreed Material Facts (Doc. 197). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

**A. The Underlying Lawsuits**

At the time the motion for partial summary judgment was filed, all but one of the opioid lawsuits against Publix was stayed. Doc. 197 ¶ 5.[3] The un-stayed case, *Cobb County v. Purdue Pharma L.P. et al.*, is a "bellwether case" pending in the Northern District of Ohio as part of a multi-district litigation. *Id.* ¶¶ 3-5. In that action, in addition to other claims, Cobb County sues several retail chain pharmacies for the cause of action of public nuisance. *See* Doc. 177-11. The county alleges that the pharmacies caused the opioid epidemic through conduct spanning many years, which included:

a. Knowingly and unlawfully distributing, dispensing, and selling opioids in ways that facilitated and encouraged their flow into the illegal, secondary market;

b. Knowingly and unlawfully distributing, dispensing, and selling far more opioids in Cobb County and the surrounding communities than was reasonably necessary;

c. Knowingly and unlawfully distributing, dispensing, and selling opioids without maintaining effective controls against diversion;

d. Failing to use the data available to them to identify suspicious orders, suspicious red flag prescriptions, and to otherwise prevent or reduce the risk of diversion;

e. Not stopping or suspending shipments of suspicious orders;

f. Not adequately investigating suspicious orders;

g. Not reporting suspicious orders;

[3] Publix explained at the oral argument on June 26, 2024, that the final case has now been stayed as well.

    h.  Not effectively monitoring suspicious orders;

    i.  Knowingly and unlawfully dispensing opioids, and "cocktails" of opioids and other drugs, despite red flags indicating that the opioids may flow into the illegal, secondary market or otherwise be diverted; and

    j.  Acting in concert with opioid manufacturers to promote the false messaging about the treatment of pain and the addictive nature of opioids, to encourage their use by health care providers and patients, and to encourage their pharmacists to fill as many opioid prescriptions as possible in the face of indicia of diversion.

*Id.* ¶ 747.  When the pharmacies engaged in this conduct, the county alleges that each one:

> either knew, was substantially certain, or should have known that by failing to act reasonably and lawfully with respect to the distribution, dispensing, and sale of opioids, and "cocktails" of opioids and other drugs, and by participating in the false marketing of opioids, in Cobb County and the surrounding communities, diversion and the associated harms and resulting interference with public health, safety, and welfare would occur.

*Id.* ¶ 748.  The complaint also alleges that the pharmacies failed to maintain effective controls against diversion of opioids, take steps to halt orders that they knew or should have known were suspicious, or maintain effective policies and procedures to guard against diversion, in breach of statutory and common law duties. *Id.* ¶ 102.

The consequences of the pharmacies' alleged actions include:

    a.  The creation and fostering of an illegal, secondary market for prescription opioids;

    b.  Easy access to prescription opioids by children and teenagers;

> c. A staggering increase in opioid abuse, addiction, overdose, injuries, and deaths;
>
> d. Infants being born addicted to opioids due to prenatal exposure, causing severe withdrawal symptoms and lasting developmental impacts;
>
> e.  Employers have lost the value of productive and healthy employees; and
>
> f. Increased costs and expenses for Plaintiff relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems.

*Id.* ¶ 746.

The complaint further alleges that the pharmacies' actions have contributed to an oversupply of opioids in Georgia and Cobb County, which sharply increased opioid-involved overdose deaths. *Id.* ¶¶ 702-703.   As a result, the county has experienced:

> increased and intensified emergency medical responses to overdoses; increased drug-related offenses affecting law enforcement, jails, and courts; enormous resources spent on community and social programs to treat those with opioid use disorders; higher workers compensation costs for prescription opioids and opioid-related claims; and ultimately prevalent opioid abuse throughout the County, including in public places.

*Id.* ¶ 715.  The number of children in foster care has also increased, and there has been a significant increase in babies born addicted to opioids. *Id.* ¶¶ 717-718.

The parties agree that the allegations in all the underlying complaints against Publix are very similar to the Cobb County action and to each other. *See* Doc. 257 at 63.  Counsel for ACE stated at the oral argument that 28 of them also include the following or similar language from a case brought by the City of Miami Gardens:

"Plaintiff does not seek damages for the wrongful death, physical personal injury, serious emotional distress, or any physical damage to property caused by defendants' actions." *Id.* at 63, 70, quoting Doc. 179-25 ¶ 484.

### B.  2013 Insurance Coverage

In 2013, Publix was insured by a "tower" of coverage through eight insurers. Doc. 177 ¶ 6; Doc. 197 ¶ 12.  At the bottom of the tower—which means it is the first policy to come into effect when Publix makes a claim—is the Hartford Fire Insurance Company's Druggists Policy. *Id.* ¶ 20.  The Druggists Policy is a "fronting" policy in which its policy limit, $100,000, is the same as its deductible. *Id.* ¶¶ 13, 24-25.  Publix is required to reimburse Hartford in full for any defense and indemnity coverage up to the limit of liability. *Id.* ¶ 25.  In addition, the policy has a self-insured retention for bodily injury claims, per occurrence, of $1.9 million. *Id.* ¶ 24.

The next policy in the 2013 tower of coverage is the Liberty Mutual Fire Insurance Company's umbrella policy. Doc. 197 ¶ 21.  Its duty to defend goes into effect upon exhaustion of the "retained limit" by "payment of judgments or settlements." *Id.* ¶ 40.  The retained limit is the self-insured retention and the Hartford Druggists' policy limit. *Id.* ¶¶ 41-42.  The retained limit cannot be reduced or exhausted by defense costs. *Id.*  The Liberty Mutual policy has a three million dollar limit of liability and a $500,000 deductible. Doc. 197 ¶¶ 14, 37.

Next is the ACE Property and Casualty Insurance Company's excess policy. *Id.* ¶ 22.  The ACE policy goes into effect upon exhaustion of the underlying insurance by

payment of judgments or settlements. *Id.* ¶¶ 51-58.  It has a $25 million limit of liability. Doc. 197 ¶ 15.

The remaining policies and their limits of liability are as follows, in order: Great American Insurance Company of New York ($25 million); Liberty Insurance Underwriters, Inc. ($50 million); XL Insurance America, Inc. ($25 million); and Ohio Casualty Insurance Company ($25 million).[4] *Id.* ¶¶ 16-19, 23.

The first tier of coverage, Hartford's Druggists Policy, covers "those damages and claim expenses [Publix] becomes legally liable to pay because of bodily injury arising out of the druggists products hazard." Doc. 177-1 § I(1)(a).  The policy further states that "[d]amages because of bodily injury include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the bodily injury." *Id.* § I(1)(f).  Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time." *Id.* § V(2).  "Occurrence" with respect to a bodily injury is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § V(15).  The next policy, Liberty Mutual, adopts the relevant terms and conditions of the Druggists Policy. Doc. 197 ¶¶ 21, 36; Doc. 177-2.

The ACE policy, whose terms govern all remaining excess policies, Doc. 197 ¶¶ 23, 61, contains substantially similar relevant terms to that of the Druggists Policy.

---

[4] National Surety Corporation provided the topmost excess policy for 2013.  The Court's September 15, 2023 Order dismissed or stayed the counts against it for lack of subject matter jurisdiction. *See* Doc. 214.  This policy is not a subject of the motion for partial summary judgment and will not be discussed in this Order.

*See* Doc. 177-3.  Like the Druggists Policy, it applies to damages "because of bodily injury" that is caused by an "occurrence" and that occurs during the policy period; such damages "include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury." Doc. 197 ¶¶ 45-46. It states that ACE will have the "duty to defend the insured against any suit seeking damages for bodily injury" to which the insurance applies. Doc. 177-3 § III(A), p. 8. The ACE policy contains the same definition of "occurrence" as the Druggists Policy, and a substantially similar definition of "bodily injury." Doc. 197 ¶¶ 48-49.

## II.    SUBJECT MATTER JURISDICTION

As a threshold matter, defendants argue that Publix's motion for partial summary judgment is unripe, because none of the conditions precedent to coverage under their policies—namely, exhaustion of the self-insured retention ("SIR") and the payment of judgments or settlements—have occurred. Doc. 198 at 18-22.  Publix responds that there is a justiciable controversy because the insurers' denials of coverage create a true dispute, and it is likely the conditions precedent to coverage will occur because Publix's defense costs have already exhausted the SIR for the first policy. Doc. 222.

The Court previously addressed the question of ripeness in its September 15, 2023 Order on another defendant's motion to dismiss. Doc. 214.  The Order stayed the duty to indemnify issue as to all defendants because it was unripe, and it dismissed as unripe the counts that related to the movant-insurer, the "top" excess insurer in

most years' towers of coverage, because Publix did not allege a ripe controversy against it. *Id.*

Now, after the benefit of supplemental briefing and oral argument on the issue, the Court concludes that it has subject matter jurisdiction to reach the merits of Publix's motion for partial summary judgment, because there is an actual controversy with respect to at least some of the 2013 insurance policies.

### A. The Parties' Arguments

In their opposition to Publix's motion for partial summary judgment, defendants argue that the motion is not ripe because no coverage obligations are triggered until Publix exhausts its SIR, which it has not demonstrated that it has done. Doc. 198 at 18-22.[5]  Because defendants' coverage duties are hypothetical until or unless the policies are triggered, the declarations Publix seeks amount to impermissible advisory opinions. *Id.*  Accordingly, defendants argue there is no ripe controversy under Article III of the Constitution. *Id.*

Publix responds that it made its declaratory judgment requests subject to the policies' retentions and/or deductibles, attachment points, and limits. Doc. 222 at 4. Moreover, it argues, both conditions necessary for a ripe declaratory judgment are satisfied: 1) a true dispute exists regarding coverage; and 2) it is likely that resolution of the dispute will have a tangible impact on defendants' obligations. *Id.* at 6-7.  With respect to the first condition, defendants' Answers indicating they will deny coverage

---

[5] Citations to the filings refer to the page numbers of the filed documents, rather than the parties' internal pagination.

to Publix for the underlying lawsuits demonstrate the existence of a true coverage dispute. *Id.* at 7.

With respect to the second condition, Publix contends that the Druggists Policy is already triggered because Publix has already spent significantly more than the SIR and deductible in defense costs. *Id.* at 10-11.  Publix submits a declaration stating that it "has incurred and paid at least $6,670.550.21 in defense costs related to the Opioid Lawsuits since April 2021," the month it provided notice of the lawsuits to its insurers. Doc. 223 ¶ 3.  The declaration also states that the amount of damages the plaintiffs in the underlying lawsuits seek from Publix is unknown, and lists amounts for which other defendants in the multi-district litigation have settled. *Id.* ¶ 4.  The settlements for other retail pharmacy chains have ranged from $1.2 billion to more than five billion dollars. *Id.*  Publix argues that its declaration demonstrates that the Druggists Policy has already been triggered, and that the other policies are likely to be as well. Doc. 222 at 10-11.

In response, defendants argue that Publix has failed to show that any of the policies have been triggered by proper exhaustion, which defendants contend is required for the action to be ripe. Doc. 225 at 8-10.  Defendants point out that the excess policies require exhaustion through payment of "judgments or settlements," rather than defense costs. *Id.* at 14.  Defendants also challenge Publix's claim that the Druggists Policy is ripe for two reasons. *Id.* at 10-13.  First, the Druggists Policy does not provide true coverage, because Publix must reimburse every dollar paid under it; as a result, coverage under the Druggists Policy has no tangible impact on Hartford's

10

obligations. *Id.* at 10-11.  Second, the Druggists Policy requires the SIR to be exhausted for "each occurrence."  *Id.* at 11-12.  Publix's declaration giving a total amount of defense costs fails to differentiate between occurrences and between coverage years. *Id.* at 12-13.

In its reply, Publix responds that defendants' theory about the tangible impact would mean that a coverage dispute over a fronting policy could never be ripe. Doc. 238 at 6.  In any event, coverage under the Druggists Policy will have a tangible impact on the parties because it is a full insurance policy that, once triggered, requires Hartford to pay the $100,000 policy limit, and it will then trigger the other policies. *Id.* at 4-6. Further, the ruling that Publix is seeking in this action as to whether the Opioid Lawsuits allege an "occurrence" must be resolved before the parties can determine how many occurrences the lawsuits present for the purpose of the SIR. *Id.* at 6-7.

In sur-reply, defendants again contend that Publix has not met its burden of showing a likelihood that it will exhaust the SIR, because it has failed to offer any explanation or theory for how the aggregate defense costs contribute to a per-occurrence SIR. Doc. 241 at 1-2.  In addition, the Druggists Policy does not require Hartford to pay the deductible amount, which means there is no concrete possibility that a ruling for Publix will cause money to change hands. *Id.* at 3.  Defendants also point out that Publix has failed to address the fact that the excess policies are not triggered until Publix has paid "judgments or settlements," rather than defense costs. *Id.* at 2.

At the oral argument, Publix emphasized that a declaratory judgment as to all the insurers at once is the most efficient manner of addressing the common coverage issues, rather than waiting for each policy to be triggered and litigating piecemeal. Publix also disclosed that it has reached a settlement in principle in some of the underlying lawsuits that, once finalized, would trigger at least some of the excess policies, rendering the question of ripeness indisputable.

Defendants responded that the settlement in principle was too uncertain to establish ripeness. In addition, counsel for Hartford explained its position that the SIR cannot be reduced by defense costs, and that it has no obligation to make payments toward the deductible that Publix would reimburse. *See* Doc. 177-1 at § I(1)(b), endt. 4(1). As a result, Hartford argued that the Court's ruling on the coverage issues would have no tangible impact on it.

### B. Discussion

Federal courts have an obligation to ensure that they have subject matter jurisdiction over an action before they may proceed. *See Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409-10 (11th Cir. 1999). Article III of the Constitution limits the subject matter jurisdiction of the district courts to "cases and controversies." U.S. Const. art. III, s. 2. As the Court explained in its September 15, 2023 Order:

> For claims brought under the Declaratory Judgment Act, the statutory equivalent of Article III's "cases and controversies" requirement is that an "actual controversy" must exist. *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981). The Declaratory Judgment Act provides, "In a case of actual controversy...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, whether an "actual" or "justiciable" controversy exists is a threshold question that determines jurisdiction in a declaratory judgment action. *Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (internal quotation marks omitted).

…

To satisfy the "actual controversy" requirement, a controversy "must be definite and concrete, touching the legal relations of the parties having adverse interests." *United States Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) (citation and quotations omitted). Courts are not permitted to issue advisory opinions that address "what the law would be upon a hypothetical set of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). As a result, the controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). "The remote possibility that a future injury may happen is not sufficient[.]" *Id.* On the other hand, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction… Rather, the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995) (quotations and citations omitted).

Doc. 214 at 8-9.

With respect to insurance coverage disputes for excess policies, courts have taken different positions regarding the legal standard for ripeness. Some have held that a coverage dispute is ripe, irrespective of exhaustion of the underlying policy, if the excess insurer has either denied coverage or formally taken the position that it has no duty to defend. *Id.* at 14 (collecting cases). Other courts have concluded that an excess insurance declaratory judgment action is only ripe if there is a true coverage

dispute *and* the allegations show a probability that the primary policies will be exhausted. *Id.* at 14-16 (collecting cases). Because the latter view is more consistent with the Eleventh Circuit's holding in *GTE*, 67 F.3d at 1569, the Court adopts it here, just as it did in its September 15, 2023 Order.[6]

Here, Publix has established that a true coverage dispute exists. Unlike the insurer who moved to dismiss, *see* Doc. 214 at 18-23, all defendants named in the motion for partial summary judgment have affirmatively denied coverage.[7] Accordingly, the first prong of the ripeness question is satisfied.

The second prong—whether it is likely that the resolution of the dispute will have a tangible impact on the parties, *see id.* at 12[8]—raises the more difficult question. Publix has offered little to establish this prong. Evidence of the defense costs it has accrued has no bearing on the excess policies, which are exhausted only through payments of judgments or settlements. The Druggists Policy, too, appears to exclude defense costs from the SIR. And there is scant evidence that Publix will be subject to

---

[6] Defendants' arguments may be interpreted to favor a third view: that this action is unripe until the excess insurers' duty to defend actually arises. *See* Doc. 225 at 8-9. A single case squarely supports this view. *See Allied World Assurance Co. v. Lee Mem'l Health Sys.*, No. 2:18-cv-158, 2019 WL 1970609, *3 (M.D. Fla. May 1, 2019) (action against insurer was unripe where insured stated it had not exhausted the self-insured retention that was a condition precedent to insurer's duty to defend). However, this case appears to be an outlier. Most of the other cases on which defendants rely simply hold that there is no duty to defend until the conditions precedent to coverage arise—which is uncontroversial and does not address ripeness. The Court declines to follow *Allied World*, because it finds that an actual controversy may exist before the duty to defend has arisen.

[7] Indeed, even Hartford has denied coverage, even though its counsel maintained at the oral argument that it would have no obligations toward Publix even if the claims were covered.

[8] The September 15, 2023 Order discussed in detail the caselaw regarding this prong. Doc. 214 at 9-10, 15-16. This Order incorporates that discussion by reference.

judgments or settlements that will exhaust the SIR or trigger the other policies. All the underlying lawsuits against Publix are stayed, and it has not yet entered into any settlements, although it has reached a settlement in principle. Evidence of other pharmacies' settlements has only minimal relevance without an indication that their circumstances are similar to those of Publix. At this stage it cannot be said that Publix is likely to become obliged to pay so much money that the policies toward the top of the tower are likely to be triggered.

Nonetheless, on balance, it is likely that a ruling on the merits will have a tangible impact on the parties with respect to at least some of the excess policies. In particular, the Liberty Mutual and ACE policies could come into effect after $2.5 million and five million dollars in settlements or judgments. Publix is facing dozens of lawsuits, and it is a reality of litigation that Publix may determine that settling at least some of them would be more advantageous than continuing to accrue defense costs—especially since its insurance tower will not provide a defense unless it has already paid settlements or judgments. And counsel's representation that Publix has reached a settlement in principle in at least one suit suggests that Publix is not fundamentally opposed to settling these actions, despite its denial of liability.

Further, although the Druggists Policy SIR must be exhausted "per occurrence" to trigger the Liberty Mutual policy, the Court agrees with Publix that this question is not dispositive at this threshold stage. Should the Court resolve the merits questions in Publix's favor, then Publix and Liberty Mutual would need to determine, one way or another, whether Liberty Mutual's duty to defend has actually been triggered.

Having to make that complicated determination is itself a tangible impact of the Court's ruling.  And ACE would be in the same position as Liberty Mutual if Publix accrues judgments or settlements exceeding five million dollars instead of $2.5 million. Thus, the Court finds that there is a sufficient likelihood that Publix will be subject to enough judgments or settlements to trigger a determination of Liberty Mutual's and ACE's obligations toward the underlying lawsuits.  As a result, it is likely that a ruling on the merits will have a tangible impact on the parties.  Coupled with the fact that a true coverage dispute exists, there is an actual controversy with respect to at least some of the 2013 insurer defendants.  Thus, the Court has subject matter jurisdiction to reach the merits of Publix's motion for partial summary judgment.

## III.   INSURERS' DUTY TO DEFEND

Publix's motion for partial summary judgment asks the Court to rule on two disputed coverage questions common to all the policies: 1) whether the opioid lawsuits allege damages "because of bodily injury"; 2) whether they allege "occurrences" or intentional conduct. Doc. 176.  The insurers have cited these as reasons to deny coverage, along with a third reason, prior knowledge, that defendants raise in their response in opposition. *See* Doc. 198 at 47-49.

The parties spend the most time addressing the question of whether the suits allege damages "because of bodily injury."  Because Florida law defines "because of" as a direct causal connection, rather than but-for causation, the Court concludes that the underlying lawsuits are not covered under this provision.  Accordingly, it need not reach the other disputed coverage questions.  Publix's motion for partial summary

judgment is due to be denied.  Moreover, Publix will be directed to show cause as to why the Court should not grant summary judgment in favor of defendants pursuant to Fed. R. Civ. P. 56(f).

### A. Parties' Arguments

Publix argues that the opioid lawsuits allege damages "because of bodily injury," which the policies cover. Doc. 176 at 29-45.  "Because of" means "caused by" or "by reason of" under Florida law. *Id.* at 30.  The opioid lawsuits are replete with allegations about the injuries, sickness, disease, and death caused by the opioid epidemic, including overdoses, addiction, children being born with addiction, increases in Hepatitis C, and many fatalities. *Id.* at 14-22, 30.  All of these are bodily injuries for which the plaintiffs seek redress, along with the costs of treating those injuries. *Id.* at 30.

Publix asserts that the policies cover the lawsuits even though they are brought by governmental entities, rather than a specific injured individual. *Id.* at 30-31.  In support, Publix relies on the policy provision that "damages because of 'bodily injury' include damages claimed by *any person or organization* for care, loss of services, or death resulting at any time from the 'bodily injury.'" *Id.* at 31, quoting Doc. 177-1 at § I(1)(f), p. 6 (emphasis added).  The policies also contain a pollution exclusion that excludes coverage for claims "by or on behalf of a governmental authority" relating to pollution, which Publix argues indicates governmental authorities may otherwise bring covered claims. *Id.* at 31.  Moreover, the policies' 2018 addition of a specific exclusion for claims made by or on behalf of a governmental entity related to opioid and narcotics

liability—via an endorsement stating that it "changes the policy"—would be unnecessary if they already excluded claims brought by governmental entities. *Id.* at 16, 31-32.

While acknowledging a split in legal authority on this topic, Publix argues that the better-reasoned opioid coverage decisions support its position that the underlying lawsuits allege damages because of bodily injury. *Id.* at 32-45.  Moreover, because the Court must resolve any ambiguities in favor of coverage, Publix contends that the Court must rule in Publix's favor if it finds that both positions are reasonable. *Id.* at 45-46.

Responding in opposition, defendants argue that they, rather than Publix, are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(f), because the policies do not allege damages because of bodily injury. Doc. 198 at 22-43.  Florida law defines "because of" as "a direct causal connection" that is more direct than but-for causation, which is described using the phrase "arising out of." *Id.* at 24-25.  Indirect losses that are not measured by specific injuries are not considered to be "because of bodily injury," even if they are related to or arise out of bodily injury. *Id.* at 25-32.  As a result, defendants argue, the governmental costs occasioned by the opioid epidemic do not have the requisite direct connection to specific injuries. *Id.*

Defendants further assert that the damages sought in a lawsuit must compensate for specific injuries to specific people in order for the policies to cover them. *Id.* at 32.  Like Publix, defendants cite other policy provisions in support of their position. *Id.* at 32-36.  For example, the definition of bodily injury expressly includes "mental anguish

resulting from bodily injury" and claims "by any person or organization for care resulting from the bodily injury"; under Publix's position, however, defendants argue those situations would already be covered as derivative of the injury, rendering their inclusion surplusage. *Id.* at 32-33.  In addition, the policies' repeated use of a definite article, "*the* bodily injury," demonstrates that they are referring to a specific, identifiable injury. *Id.* at 34-35.

Defendants, of course, ask the Court to follow the opioid coverage decisions that support their view and criticize the ones on which Publix relies. *Id.* at 23-39.  As to ambiguity, they contend that the fact that there is a split in authority does not mean the policy is ambiguous. *Id.* at 40-41.

In reply, Publix contends that the opioid lawsuits do allege particular injuries to specific individuals—thousands of individuals, in the aggregate—who are simply anonymous for privacy reasons. Doc. 209 at 8.  Moreover, the plaintiffs are seeking to recover, *inter alia*, the costs of their medical treatment, which defendants concede the policies would cover. *Id.*  Publix asserts that lawsuits against gun manufacturers, which courts have found allege bodily injury for the purpose of a duty to defend, are analogous to the underlying lawsuits here. *Id.* at 11-12.  Publix also responds to defendants' arguments regarding specific policy provisions. *Id.* at 12-14.

## B. Legal Standard

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Then, "in order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Under Florida law,[9] "an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire and Cas. Co.,* 393 F.3d 1226, 1230 (11th Cir. 2004), citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.,* 771 So.2d 579, 580–81 (Fla. 4th DCA 2000).  This rule is known as the "eight corners rule," referring to the four corners of the underlying complaint and the four corners of the insurance policy. *See Addison Ins. Co. v. 4000 Island Blvd. Condominium Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017).  "If the allegations in the complaint state facts that bring the

---

[9] The parties agree that Florida substantive law governs this action. *See* Docs. 176, 198; Doc. 11 ¶ 32.

injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." *Id.* (citations omitted).

Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007). An insured bears the burden of proving that a claim against it is covered by the insurance policy, while the insurer bears the burden of proving that an exclusion to coverage applies. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburg*, 143 F.Supp.3d 1283, 1293 (S.D. Fla. 2015). Any doubts about the duty to defend must be resolved in favor of the insured. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 443 (Fla. 2005).

## C. Discussion

The question of whether opioid lawsuits allege damages "because of bodily injury" under Florida law presents an issue of first impression in the Middle District of Florida. Neither the Florida Supreme Court, Florida's District Courts of Appeal, nor the Eleventh Circuit[10] have addressed it. Where there is no explicit state law on an issue, "a federal court attempting to forecast state law must consider whatever might lend it insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to

---

[10] *But see Allied Prop. Cas. Ins. Co. v. Bloodworth Wholesale Drugs, Inc.*, --- F.Supp.3d ---, No. 7:22-cv-113, 2024 WL 1313844 (M.D. Ga. March 27, 2024) (finding no duty to defend drug distributor against opioid lawsuits under Georgia law because suits did not allege damages "because of bodily injury"), *appeal filed*, No. 24-11398, 2024 WL 1313844 (11th Cir. April 26, 2024).

show how the highest court in the state would decide the issue at hand." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) (quotation omitted). Absent evidence to the contrary, the federal court must assume that the state court would adopt the prevailing or majority view. *Bobo v. Tenn. Valley Authority*, 855 F.3d 1294, 1304 (11th Cir. 2017); *Wammock v. Celotex Corp.*, 835 F.2d 818, 820 (11th Cir. 1988).

First, the Court will address Publix's argument that the phrase "because of bodily injury" may be ambiguous and must therefore be interpreted in favor of coverage. *See* Doc. 176 at 45-46. Policy language that is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," will be considered ambiguous; but a provision or term will not be found ambiguous "merely because it is complex and requires analysis." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165-166 (Fla. 2003). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction" does a court interpret ambiguities against the draftsman. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla. 1979) (citation omitted).

Here, although it is clear from the split in the caselaw that there are two differing opinions about whether the opioid lawsuits allege damages "because of bodily injury," the meaning of the policy language itself is not ambiguous—only its application to the underlying lawsuits is in dispute. "Bodily injury" is defined within the policies as "bodily injury, sickness or disease sustained by a person, including mental anguish or

death resulting from any of these at any time." *See* Doc. 177-1 § V(2), p. 16.    The Florida Supreme Court has defined "because of" as "by reason of" or "caused by," looking to its dictionary definition to determine the plain meaning of the phrase. *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 292 (Fla. 2007) (finding phrase "any other person with respect to liability because of acts or omissions of the insured" was not ambiguous). Therefore, to be covered, the damages sought in the underlying lawsuits must be caused by or occur by reason of bodily injury. *See id.*

Florida courts interpret the phrase "because of" narrowly.    It has "a more circumscribed meaning…than merely being a sequential link in the chain of events." *Id.* at 293 (quotation omitted).    Additionally, it is narrower in meaning than the term "arising out of." *Id.*    "Arising out of" requires only "some level of causation greater than coincidence," and does not equate to proximate cause. *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 533 (Fla. 2005) (finding phrase "arising out of" unambiguous).    The meaning of "arising out of" is more analogous to "but for" causation. *Guideone*, 420 F.3d at 1327-28 (collecting cases).    In contrast, "because of" or "caused by" refers to "a direct causal connection." *Atkinson v. Dollar Rent-A-Car, Inc.*, 525 So.2d 976, 977 (Fla. 3d DCA 1988); *see St. Paul Fire Ins. Co. v. Thomas*, 273 So.2d 117, 120 (Fla. 4th DCA 1973) (describing "the nature of the causal connection" for the phrase "caused by" as "strong or direct"). [11]    Thus, pursuant to the

---

[11] Publix asserts in its motion that "Florida courts have taken a broad view of 'because of' in the context of…claims 'because of property damage.'" Doc. 176 at 30.  At the oral argument, however, counsel for Publix did not dispute that "because of" requires direct causation rather than but-for causation.  *See* Doc. 257 at 58.  Moreover, the authority Publix cites for its

unambiguous, plain meaning of defendants' policies, covered damages must have a direct causal connection to bodily injury; a but-for connection is insufficient.

A single decision has addressed the question of the causal relationship between opioid lawsuits and bodily injury under Florida law.  In *Travelers Property Cas. Co. of Am. v. Anda, Inc.*, 90 F.Supp.3d 1308 (S.D. Fla. 2015), a court in the Southern District of Florida concluded that an opioid lawsuit against a prescription drugs distributor did not allege damages "for bodily injury."  The underlying lawsuit in *Anda* alleged that the plaintiff, the state of West Virginia, incurred "additional costs to [its] hospitals, schools, courts, social service agencies, jails, and prisons due to the [opioid] epidemic." *Id.* at 1311.  The insured argued that the suit sought damages "for bodily injury" because the claims "stem from addictions, diseases, and sicknesses related to West Virginia citizens' abuse of prescription drugs." *Id.* at 1313.  The court rejected this argument, finding that West Virginia sought damages "for its own economic loss and not 'for bodily injury,'" and did not "assert claims on behalf of individual citizens for the physical harm sustained personally by those citizens." *Id.* at 1314.  Significantly,

---

contention about the breadth of the phrase does not withstand scrutiny.  Publix relies on *Assurance Co. of Am. v. Lucas Waterproofing Co.*, 581 F.Supp.2d 1201, 1215 (S.D. Fla. 2008), in which a federal district court found that attorneys' fees and costs constituted "damages because of property damage."  As another district court observed in *Mid-Continent Cas. Co. v. C-D Jones & Co. Inc.*, No. 3:09-cv-565, 2014 WL 12469921, *2 (N.D. Fla. Jan. 22, 2014), however, *Lucas*'s conclusion about attorneys' fees is arguably inconsistent with a decision of the Fifth District Court of Appeal.  Indeed, in the view of one state court appellate judge, *Lucas* "does not accurately reflect the state of Florida law." *GEICO Gen. Ins. Co. v. Williams*, 111 So.3d 240, 248 (Fla. 4th DCA 2013) (Gross, J., concurring).  Accordingly, this Court will follow the ample caselaw demonstrating that "because of" is a narrow term under Florida insurance law rather than Publix's inadequately supported assertion that it is broad.

the allegations did not require the state "to prove that persons were injured in order to prevail" on the claims against the insured. *Id.* at 1314 n.3.  As a result, the court found, "[a]ny reference to the drug abuse and physical harm to West Virginia citizens merely provides context explaining the economic loss to the State." *Id.* at 1314-15.

Publix identifies several reasons why this Court should not follow *Anda*. Foremost among them is the fact that the *Anda* court was—primarily—interpreting the policy phrase "for bodily injury" rather than "because of bodily injury." Doc. 176 at 38.[12]  The Seventh Circuit has differentiated between those two phrases, holding that "for" is narrower than "because of," and requires more direct causation. *See Cincinnati Ins. Co. v. H.D. Smith, LLC*, 829 F.3d 771, 774 (7th Cir. 2016), citing *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010).  The parties do not identify any Florida authority concerning the relationship between the two phrases.  Absent such authority, the Court is not convinced this distinction is dispositive.  After all, one of the policies at issue in *Anda* employed the phrase "because of" instead of "for." *Anda*, 90 F.Supp.3d at 1318.  And one of the policies at issue here, the ACE policy, uses both "for" and "because of." Doc. 177-3 § III, p. 8.  Further, several of the other opioid coverage cases outside of Florida and the Seventh Circuit use both phrases

---

[12] Publix also argues that *Anda* is distinguishable because the insured was a drug manufacturer. Doc. 176 at 37.  However, that appears to be incorrect: the appellate opinion describes the insured as a "wholesale pharmaceutical distributor." *Travelers Property Casualty Co. of Am. v. Anda, Inc.*, 658 F. App'x 955, 957 (11th Cir. 2016).  Publix offers no explanation for why the relevant analysis should differ between a wholesale distributor and a retail pharmacy chain, particularly one that allegedly serves as a distributor to its own pharmacies. *See* Doc. 177-11 ¶¶ 461, 463.

interchangeably. *See Westfield Nat'l Ins. Co. v. Quest Pharmaceutical*, 57 F.4th 558, 565 (6th Cir. 2023); *Acuity v. Masters Pharmaceutical, Inc.*, 205 N.E.3d 460, 470 (Ohio 2022); *ACE American Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239 (Del. 2022); *AIU Ins. Co. v. McKesson Corp.*, 598 F.Supp.3d 774 (N.D. Cal. 2022).

Publix also suggests that the Court should not follow *Anda* because the Eleventh Circuit implicitly overruled the district court's bodily injury finding when it affirmed on a different ground. Doc. 176 at 39-40, citing *Travelers Property Casualty Co. of Am. v. Anda, Inc.*, 658 F. App'x 955 (11th Cir. 2016). The affirmance expressly declined to reach the question of whether the claims were "for" or "because of bodily injury," and found that the "better conclusion" was that the policies did not afford coverage because an exclusion applied. *Id.* at 958. Publix argues that the court could not reach the exclusion unless it "believed" that the suit was otherwise covered. Doc. 176 at 39-40. But this Court does not follow unexpressed beliefs, particularly from unpublished decisions,[13] and therefore does not find that this speculation has bearing on its determination here.

Several appellate courts outside of Florida have reached the same conclusion as *Anda* when interpreting similar state laws. Most recently, in *Westfield Nat'l Ins. Co. v. Quest Pharm., Inc.*, 57 F.4th 558, 563 (6th Cir. 2023), the Sixth Circuit found that the opioid lawsuits do not assert damages "because of bodily injury," under Kentucky law, because "the underlying plaintiffs need not plead and prove the existence of a covered

---

[13] *See Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1219 n.12 (11th Cir. 20204) (unpublished decisions of the Eleventh Circuit "are persuasive authority at best.").

bodily injury to recover[.]"  In addition, the policies' definition of bodily injury as one that is "sustained by a person," and their use of a definite article in "the bodily injury," demonstrate that a covered lawsuit must be tied to an individual's bodily injury. *Id.* at 564-65.  The opioid lawsuits, in contrast, "allege no particular injury to any particular person" and "instead broadly describe societal harms caused by opioid addiction[.]" *Id.* at 564.  The policies were intended to include only derivative claims that are "directly related to and dependent on the existence of a particular bodily injury"; the underlying plaintiffs' claims "are purely economic and thus too attenuated from a specific covered injury." *Id.* at 566.

The *Quest* court adopted the reasoning of the Supreme Courts of Ohio and Delaware in *Acuity v. Masters Pharm., Inc.*, 205 N.E.3d 460 (Ohio 2022), and *ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239 (Del. 2022).  In *Acuity*, the court rejected the insured's argument that allegations of government losses encompassed the specific injuries of specific people. 205 N.E.3d at 468.  The court observed that the underlying plaintiffs were not alleging that the insured's conduct was a proximate cause of those specific injuries, and they did not seek to recover the amount they spent to treat those specific injuries. *Id.*  Rather, the underlying plaintiffs' theory of relief was that the insured's failure to prevent the improper diversion of prescription opioids was a direct and proximate cause of the opioid epidemic, and the plaintiffs sought economic damages to compensate for that public health crisis. *Id.*  The references to the injuries sustained by plaintiffs' citizens merely "provide[d] context for their public nuisance, negligence, and RICO claims" and "bolster[ed]" the allegation that the insured's

conduct created a public health crisis that caused the government to incur a financial burden. *Id.* at 469.  As a result, the connection between the damages sought and the bodily injury alleged was too "tenuous" to constitute "damages because of bodily injury." *Id.* at 469-70, 472-73; *see also Rite Aid*, 270 A.3d 239, 252-54 (the underlying claim was directed to a public health crisis, not an individual injury, similar to a city suing a soda distributor for increasing its citizens' obesity rates; it did not seek to recover directly for specific, individual injuries).

Here, too, the Court finds that the causal connection between the specific injuries alleged and the damages the underlying plaintiffs seek in the opioid lawsuits is too attenuated to constitute damages "because of bodily injury" under Florida law. Although the underlying lawsuits refer to people injured by opioids, the plaintiffs do not seek reimbursement for the costs of those particular individuals' medical treatment.  In the Cobb County action, for example, the plaintiff alleges that Publix's contribution to the creation and exacerbation of the opioid epidemic has caused a public nuisance in the form of "severe and far-reaching public health, social services, and criminal justice consequences" whose costs exceed the "normal or typical burdens of governmental programs and services." Doc. 177-11 ¶¶ 8, 18, 23, 24.  The county seeks "a judgment that [Publix] fund the abatement of the ongoing public nuisance [it] created, contributed to, and/or maintained" as well as "injunctive relief to prevent or lessen future harm." *Id.* ¶ 752.  The route between the damages the county seeks to recover and injuries to specific individuals is circuitous at best.

While Publix is correct that the claims against it "would not exist without the numerous injuries suffered by those who used and/or abused opioid medication," Doc. 209 at 11, this statement better describes damages that "arise out of bodily injury." Given that "because of" requires a direct causal connection in Florida, not a but-for connection, the underlying complaints cannot be said to allege damages "because of bodily injury." Accordingly, after careful consideration, the Court agrees with the *Anda*, *Quest*, *Acuity*, and *Rite Aid* courts that the opioid lawsuits are not covered.

Publix urges the Court to adopt the contrary reasoning of the Seventh Circuit in *Cincinnati Ins. Co. v. H.D. Smith, LLC*, 829 F.3d 771 (7th Cir. 2016), which concerned the same underlying lawsuit as *Anda*. In *H.D. Smith*, as here, the insurance policy covered "damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury." *Id.* at 773. The court found that the underlying lawsuit's allegation of damages for money West Virginia spent treating the injuries of its citizens was no different from a mother seeking reimbursement for the care of her drug-addicted son—a scenario that the policy would plainly cover. *Id.* at 774-75. Likewise, a dissenting justice in *Rite Aid*, 270 A.3d 239 (Vaughn, J., dissenting), highlighted the underlying complaint's allegations that the plaintiffs bore the costs of the public health consequences of the opioid crisis, which could be abated by, *inter alia*, "providing addiction treatment" that Rite-Aid could fund as part of a judgment. *Id.* at 254-55. The suit's request for restitution and compensatory damages also fell, at least potentially, within the policy language covering "damages claimed by

any person or organization for care, loss of services or death resulting at any time from the personal injury." *Id.* at 254-55.[14]

Neither *H.D. Smith* nor the *Rite Aid* dissent acknowledge the significant differences in the opioid lawsuits' theories of relief from that of an individual, organization, or even government entity seeking to recover the cost of a specific injured person's care.  As the *Acuity* court explained, "the governments seek damages for their own aggregate economic injuries caused by the opioid epidemic and *not* for any particular opioid-related bodily injury sustained by a citizen as a direct result of [the insured's] failures." 205 N.E.3d at 468 (emphasis in original).  Their theories of relief do not require proof of any particular bodily injury or the cost of treating it. *See Rite*

---

[14] Several lower courts have concurred with *H.D. Smith* and the *Rite-Aid* dissent and concluded that the opioid lawsuits potentially allege damages because of bodily injury. *See AIU Ins. Co. v. McKesson Corp.*, 598 F.Supp.3d 774 (N.D. Cal. 2022); *Giant Eagle, Inc. v. Am. Guar. & Liability Ins. Co.*, 499 F.Supp.3d 147 (W.D. Penn. 2020), vacated on other grounds, 2021 WL 6276267 (May 25, 2021); *AmerisourceBergen Drug Corp. v. ACE Am. Ins. Co.*, No. 17-C-36, 2020 W.V. Cir. LEXIS 3 (Cir. Ct. W.V. Nov. 23, 2020).

Publix also cites *Walmart Inc. v. ACE Am. Ins. Co.*, No. 04CV-22-2835-4, 2023 WL 9067386 (Cir. Ct. Ark. Dec. 29, 2023). Doc. 224.  However, that case was decided under Arkansas law, which equates damages "because of bodily injury" to liability "aris[ing] from" bodily injuries. *See Walmart*, 2023 WL 9067386 at *6-7.  Because Florida law differentiates between the two terms, *Walmart* is unhelpful to this Court's determination.

Finally, Publix also relies on decisions in which courts found a duty to defend firearms manufacturers against suits in which governments asserted damages based upon the increased need for medical care and emergency services resulting from the manufacturers' products. *See* Doc. 209 at 12 n.5; *Scottsdale Ins. Co. v. Nat. Shooting Sports Foundation*, 226 F.3d 642 (Table), *2 (5th Cir. 2000) (unpublished); *SIG Arms Inc. v. Employers Ins. of Wasusau*, 122 F.Supp.2d 255, 260 (D.N.H. 2000).  This Court is not bound by these decisions, which were not decided under Florida law, and does not find them persuasive.  Moreover, the Court declines to consider a third decision, *NAACP v. Acusport Corp.*, 253 F.Supp.2d 459, 463 (E.D.N.Y. 2003), whose determination rested on a conclusion that "there is a connection, *however remote*, between injuries to persons and liability for that injury of the insured" (emphasis added).  As discussed *supra*, Florida law does not define the phrase "because of" to include remote connections.

*Aid*, 270 A.3d at 253-54 ("If the Counties ran public hospitals and sued Rite Aid on behalf of these hospitals to recover their actual, demonstrated costs of treating bodily injuries caused by opioid overprescription, the [p]olicy would most likely be triggered.").    Indeed, many of the suits expressly disclaim damages for physical personal injury or wrongful death. *See*, *e.g.*, 179-25 ¶ 484.  Therefore, the Court declines to follow the reasoning of *H.D. Smith* and the *Rite Aid* dissent, and finds that it is not consistent with Florida law's requirement of a direct causal connection.  Florida courts would likely agree with the majority view that the opioid lawsuits do not seek damages directly caused by bodily injury. *See Bobo*, 855 F.3d at 1304.

Moreover, this conclusion is consistent with the rest of the policy language.  An insurance policy must be read "as a whole, endeavoring to give every provision its full meaning and operative effect." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007) (quotation omitted).  The policies' terms refer to specific bodily injuries rather than aggregate ones: for example, they repeatedly use a definite article ("the" bodily injury), they require the insured to identify the date the bodily injury occurred, and they consider whether the insured knew about the bodily injury prior to the policy period. *See* Doc. 198 at 34-36.  These policy terms are not easily applied to the type of aggregate damages—which, although comprised of injuries to specific individuals, do not require proof of them—that are alleged in the underlying lawsuits. *See Acuity*, 205 N.E.3d at 470-71 ("If the phrase ['the bodily injury'] were interpreted as broadly as [the insured] argues it should be, it would be rather difficult to determine whether *the* bodily injury occurred during the policy period, was caused by an occurrence in the

coverage territory, or had occurred in whole or in part prior to the policy period.")
(emphasis in original).

Nor is a different conclusion compelled by the 2018 addition of a specific "opioid and narcotics liability" exclusion that, like all endorsements, noted that it "changes the policy." *C.f.* Doc. 176 at 31-32.  An exclusion, or lack thereof, cannot be relied upon to create coverage where the plain language of a policy demonstrates that coverage does not exist. *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 740 (Fla. 2002).   In addition, the breadth of the new endorsement's language contrasts starkly with the narrow provision the Court interprets in this action.   The endorsement excludes all claims "arising out of or relating to actual or alleged opioid and narcotics liability," which is defined as "liability for damages, loss, cost or expense arising directly or indirectly out of or in any way related to" the various types of misconduct alleged in the opioid lawsuits. Doc. 177-8 endt. 24, p. 62-63.  Although Publix argues that the endorsement was only necessary because the previous policies covered the suits, Doc. 209 at 14, it may instead have been intended to eliminate any argument that they were covered, preventing costly litigation.

The Court concludes that the underlying lawsuits do not allege damages because of bodily injury, and, therefore, the 2013 insurers do not have a duty to defend Publix in the underlying lawsuits.  Accordingly, Publix's motion for partial summary judgment is due to be denied.

In light of this conclusion, and pursuant to Rule 56(f)(1), Federal Rules of Civil Procedure, Publix must show cause why summary judgment on the duty to defend

issue should not be granted in favor of the 2013 insurer defendants. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999) ("A district court possesses the power to enter summary judgment *sua sponte* provided the losing party '[is] on notice that she had to come forward with all of her evidence.'"), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Accordingly, it is **ORDERED**:

1. Plaintiff Publix Super Markets, Inc.'s ("Publix") Motion for Partial Summary Judgment (Doc. 176) is **DENIED**.

2. Plaintiff shall show cause why summary judgment regarding the 2013 insurers' duty to defend it in the underlying lawsuits should not be granted in favor of Defendants, pursuant to Federal Rule of Civil Procedure 56(f)(1), within **twenty-one (21) days** from the date of this Order.

3. Defendants may reply to Publix's response to the Order to Show Cause within **twenty-one (21)** days of its filing.

4. The parties are directed to file a joint amended Case Management Report within **twenty-one (21) days** from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on October 29, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties